[Cite as *State v. Howell*, 2020-Ohio-821.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-7 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-669 |
| | : | |
| DAKOTA L. HOWELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of March, 2020.

. . . . . . . . . . .

DAVID M. MORRISON, Atty. Reg. No. 0087487, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
     Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, P.O. Box 574, Dayton, Ohio 45409
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Dakota L. Howell appeals from his conviction for rape. For the reasons set forth below, we affirm.

## I.    Facts and Procedural Background

{¶ 2} On October 4, 2017, Fairborn Police Officers Pierre Harris and Jon Matheny were dispatched to the lobby of the police station to meet with C.B. and her friend, C.N. C.B. informed the officers that she had been raped on October 1, 2017.   She identified Howell as the perpetrator.   The officers took a report and accompanied C.B. to her apartment, where they collected the clothing she had been wearing at the time of the offense.   They then directed her to a local hospital for an examination.

{¶ 3} Fairborn Police Detective Shane Hartwell was assigned to investigate the matter.   Hartwell met with C.B.   Thereafter, he made attempts to contact Howell. Because Hartwell was unable to locate Howell, he caused a probable cause warrant to be issued.   On August 23, 2018, Howell turned himself in at the Fairborn Police Department.   On that date, Hartwell met Howell in the jail facility and escorted him to an interview room where an interview was conducted.   Following the investigation, Howell was indicted on one count of rape in violation of R.C. 2907.02(A)(2).

{¶ 4} Howell filed a motion to suppress the statements made to Det. Hartwell during the interview.   A hearing on the motion was conducted on October 11, 2018. Hartwell testified that as he was escorting Howell to the interview room, Howell stated that he had been in the process of applying for a job at a store when the manager of the store informed him that there was an outstanding warrant for his arrest.   Hartwell testified that he placed Howell in the interview room and immediately proceeded to discuss and

execute a pre-interview form setting forth Howell's *Miranda* rights. Hartwell testified that Howell did not appear to be under the influence of drugs or alcohol, that Howell appeared to understand his rights, and that no promises or threats were made to cause Howell to participate in the interview. According to Hartwell, Howell initialed and signed the form, which was introduced into the record. Hartwell then entered a time of 12:40 p.m. in the upper right corner of the form and executed his own signature. Hartwell testified that, as is his normal practice, he filled in the time on the form after Howell executed the form. Hartwell testified that after writing in the time and signing the form himself, he began to ask Howell questions. Hartwell testified that Howell indicated he was aware of the nature of the charge against him and who had made the complaint. Hartwell testified that Howell also indicated that he and the victim had engaged in consensual sex.

{¶ 5} Hartwell testified that the interview room was equipped with audiovisual recording equipment which must be turned on by a switch located outside of the room. Hartwell testified that, after executing the form and hearing the above statements from Howell, he realized he had forgotten to turn on the recording equipment. Hartwell testified that he then stepped outside of the room and flipped the switch to the on position.

{¶ 6} The recorded portion of the interview was made part of the record. The video indicates that the recording began at 12:42 p.m. On the video, Hartwell walked from the doorway to a table where Howell was seated. A document can be observed on the table. Hartwell asked Howell whether they had reviewed the form and discussed Howell's rights. Howell indicated that they had reviewed and discussed the form and his rights. Hartwell then asked Howell if he had indicated that he was willing to talk to Harwell without the presence of a lawyer. Howell stated that he had agreed to the

interview, but that he no longer wanted to speak to Hartwell. Hartwell reiterated that Howell had agreed to talk but now did not want to talk. Howell again stated that he no longer wished to speak to Hartwell. Howell also made several statements thereafter.

{¶ 7} Following the hearing, the trial court overruled the motion to suppress the statements made to Hartwell prior to the point that Howell asserted his wish to remain silent, but sustained the motion with regard to the statements made thereafter.

{¶ 8} A jury trial was conducted in January 2019. At that time, C.B. testified that she and Howell had known each other since they were in the eighth grade. She testified that they dated for approximately six to seven months beginning in early 2016. C.B. testified that while they were dating, they engaged in sexual relations. C.B. testified that she and Howell broke up in August 2016. In October 2016, she began dating T.S., who she was still dating at the time of the offense.

{¶ 9} C.B. testified that sometime shortly before October 2017, she and C.N. took food over to Howell's apartment because they had become aware he was depressed and had not eaten. C.B. explained her reason for interacting with Howell:

My best friend had died about a month earlier. She had killed herself. And that's originally how [Howell] and I had started talking in the first place because we really didn't remain that much in contact. It was a bad breakup. So, we didn't really talk much afterwards but [our mutual friends had a] group meeting because [one of them] was still friends with [Howell]. And he had mentioned that he was really sad and he had noticed some of the same signs that [my best friend] had had before she died. So, we all kind of started pitching in to make sure that he was okay."

Tr. p. 88.

{¶ 10} C.B. testified that on October 1, 2017, she was at work at a local restaurant when Howell sent her a message asking her to come over to his apartment. C.B. testified that Howell claimed to be having a hard time and stated he needed to talk to a friend. C.B. testified she got off work around 8:00 p.m. but she did not leave until T.S., who was a dishwasher at the same restaurant, was also finished with work. She testified she then drove T.S. to his residence and informed him she was going over to check on Howell.

{¶ 11} C.B. testified Howell's apartment was a one-room studio with an attached bathroom. She testified there were no chairs or couches in the apartment and that the only places to sit consisted of an exercise machine bench and Howell's twin-sized bed. She testified they sat on the bed and began talking. C.B. testified Howell informed her he had attempted suicide in the recent past. She testified Howell eventually laid down on the bed and she laid down beside him. C.B. testified that while they were talking she rolled over onto her stomach in order to check her cellular phone, which was on the floor next to the bed. C.B. testified that, as she was checking her phone, Howell got on top of her and tried to pull her leggings down. She testified she "kind of laughed it off at first [and said] that's not what's happening here. That's not what we're doing." Tr. p. 80. C.B. testified that Howell ignored her and attempted to pull her leggings down again. She testified she pulled them back up but that Howell then forced the leggings down to her knees and penetrated her vagina with his penis. C.B. testified that when Howell stopped and released her, she ran to the bathroom where she vomited. She then grabbed her purse and ran out of the apartment. She testified that when she entered her car, she received a text from Howell regarding money he claimed was missing from

his apartment.

{¶ 12} C.B. testified that she went to her apartment after the incident, and the next morning she called C.N. When asked why she did not contact the police until October 4, C.B. stated, "I was still trying to process everything that had happened. And we had just talked about how he was so depressed that he tried to kill himself. And I was worried that if I said anything that he would. And I didn't want to be responsible for that." Tr. p. 87-88.

{¶ 13} Detective Hartwell also testified at trial. During his testimony regarding his attempts to locate Howell, Hartwell stated, "I looked him up on a law enforcement information website that provides past residences for people." Tr. p. 177. Hartwell testified that the address he obtained was not valid, and he eventually had to seek a warrant in order to locate Howell. Hartwell testified as to the statements, ruled admissible, made by Howell during the interview at the police department.

{¶ 14} The State also presented the testimony of Darla Church, a registered nurse who examined C.B. following the offense. Church testified that she observed no physical injuries to C.B.

{¶ 15} Howell presented the testimony of Roy Lewis, who stated that he and Howell were friends. Lewis testified that he had observed Howell's apartment on numerous occasions and there were always four to five folding chairs available for sitting. He also testified he was with Howell when Howell learned of the allegations made by C.B. and that Howell appeared "shocked" and "kind of flabbergasted." Tr. p. 236.

{¶ 16} Howell also testified at trial. He stated he had several folding chairs in his apartment and that he never put them away. He also testified that, on the night of the

offense, C.B. was wearing a dress when she came to his apartment. Howell testified that they immediately laid down on the bed and began talking and "cuddling." Tr. p. 259. He testified that they engaged in consensual sex and that, afterward, they continued to talk. Howell testified that C.B. caused him to think she wanted to start dating him again. He testified that C.B. was "scornful" when he indicated he was not interested in a relationship and that she left the bed and went to the bathroom for a minute. When she exited the bathroom, he told her she needed to leave because a friend was coming over to visit. Howell testified C.B. then "stormed" out of the apartment. Tr. p. 266. He testified he had no further contact with C.B. until a day or two later when he texted her about money that was missing from his apartment.

{¶ 17} Howell testified that he later learned a third party had posted a comment on Facebook regarding C.B.'s accusations against him. Howell testified he was shocked by the post and that he had not heard anything about the accusation prior to seeing the post. Howell also testified he had been in the process of applying for a new job when he was informed by the hiring manager there was an outstanding warrant for his arrest. Howell testified he asked the manager what the warrant was for, and she told him that it was for a rape charge.

{¶ 18} Following the trial, the jury convicted Howell of rape as charged. The trial court sentenced him to a prison term of eight years and designated him a Tier III sex offender. Howell appeals.

## II.     Motion to Suppress

{¶ 19} Howell's first assignment of error states:

THE TRIAL COURT ERRED IN OVERRULING HOWELL'S MOTION TO SUPPRESS.

**{¶ 20}** Howell argues that the trial court should have suppressed the statements he made to Hartwell because the record does not support a finding they were voluntary.

**{¶ 21}** "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Id.*

**{¶ 22}** Howell argues that "[c]oupling together Hartwell's failure to record the 2-3 minute interaction (during which Howell confessed to consensual sex with [C.B.]) with Howell's quick and clear assertion of his Miranda rights on the recording, the voluntariness of Howell's confession should be questioned. It should also affect the credibility of Hartwell's assertion that Howell make [sic] an incriminating response on the one hand (unrecorded) but then immediately invoked his rights on the other hand (recorded)."

**{¶ 23}** The mere fact that Howell decided to terminate the interview after the recording equipment was activated does not render any previous admissions involuntary, nor does it impact Hartwell's credibility. Hartwell's testimony regarding Howell's decision

to speak to him was actually corroborated by Howell's acknowledgement, on the recording, that he had previously agreed to speak to Hartwell without an attorney. The trial court was aware of Howell's quick decision to terminate the interview after the recording was started, and it nevertheless found Hartwell's testimony about Howell's statements credible. The mere fact that a suspect has a change of heart regarding his decision to speak with law enforcement does not lead to the conclusion that any statements made prior to that change of heart were involuntary.

**{¶ 24}** We find nothing on this record to indicate that Howell's statements to Hartwell prior to the initiation of the recording were involuntary. There was no evidence that Hartwell physically or mentally coerced Howell into speaking with him, nor was there evidence that Hartwell made any threats or promises. As stated, Howell admitted on the recording that he had agreed to speak to Hartwell. Further, we cannot say Hartwell's testimony was inherently incredible. Therefore, we cannot conclude the trial court abused its discretion by crediting Hartwell's testimony. Accordingly, the first assignment of error is overruled.

### III.     Impeachment

**{¶ 25}** Howell's second assignment of error is as follows:

THE TRIAL COURT ERRED BY PERMITTING THE STATE TO QUESTION HOWELL ABOUT PRIOR ALLEGATIONS OF ALLEGED SEXUAL MISCONDUCT.

**{¶ 26}** Howell argues that the trial court erred when it permitted the State to ask him whether he was aware of any prior accusations of sexual misconduct raised by

women other than C.B. In support, he argues the rape shield statute, R.C. 2907.02, prohibited such questioning.

{¶ 27} During trial, Howell testified he was informed a background check had revealed an outstanding warrant. Howell also testified that the manager informed him the warrant was for rape. At that point, defense counsel asked, "[d]id you have a pretty good idea, once you heard that, what it was probably about?" Tr. p. 276. Howell answered, "Oh yeah, like the only person that had ever made allegations like that towards me was [C.B.], so." *Id.* Defense counsel and the prosecutor then approached the bench where the State argued that Howell had opened the door to impeachment evidence. Specifically, the State claimed a witness, Grey Gaddis, would testify that, sometime after C.B. made her allegations, he had confronted Howell concerning reports that Howell had engaged in inappropriate sexual conduct with other women.

{¶ 28} It appears that the matter was further discussed in chambers during the jury lunch break and that the trial court concluded the State could question Howell as to his statement. The in-chambers discussion is not a part of the record before us, but it is clear from the record that, at the very least, the trial court and the parties agreed upon and drafted a limiting instruction for the jury. Thereafter, during cross-examination, Howell admitted to a confrontation during which Gaddis made a claim that other women had made allegations of inappropriate sexual behavior against Howell.

{¶ 29} Howell is correct that, as a general rule, in a prosecution for rape in violation of R.C. 2907.02, "[e]vidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be" admissible except under limited circumstances

not relevant to this case. R.C. 2907.02(D). However, this court has held that a defendant waives this statutory prohibition when he or she interjects, or "opens the door" to, the issue of prior sexual activity into the case. *State v. Seymour*, 2d Dist. Montgomery No. 14324, 1994 WL 660763, *4. *See also State v. Bozeman*, 12th Dist. Butler No. CA2008-10-248, 2009-Ohio-3677, ¶ 48-49; *State v. Banks*, 71 Ohio App.3d 214, 220, 593 N.E.2d 346 (3rd Dist.1991); *State v. Gauntt*, 8th Dist. Cuyahoga No. 63792, 1993 WL 389470, *4.

**{¶ 30}** Trial courts have discretion over the admission or exclusion of evidence, and we review the court's decision for an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. An abuse of discretion includes a situation in which a trial court did not engage in a 'sound reasoning process.' Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." (Citations omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

**{¶ 31}** Since Howell made a broad statement that directly denied facts known to him and the State, we agree he opened the door to the State's attempt to impeach his credibility. We note the State did not assert there actually were other instances of such misconduct, and the State did not further pursue the matter with a rebuttal witness. Further, during re-direct, it was made clear to the jury that Howell had never been questioned by law enforcement regarding other such crimes and that he had not been arrested for, or convicted of, any other such crimes. Additionally, as discussed below, a limiting instruction was given informing the jury the evidence was to be considered solely

for the purpose of assessing Howell's credibility.

{¶ 32} Based upon this record, we cannot conclude the trial court abused its discretion by permitting the impeachment testimony. Accordingly, the second assignment of error is overruled.

## IV. Limiting Instruction

{¶ 33} The third assignment of error asserted by Howell states:

HOWELL'S RIGHT TO A FAIR TRIAL WAS PREJUDICED BECAUSE THE TRIAL COURT FAILED TO GIVE A PROPER LIMITING INSTRUCTION REGARDING THE PAST, PRIOR ALLEGATIONS OF SEXUAL MISCONDUCT.

{¶ 34} Howell claims that the limiting instruction given regarding the State's attempt to impeach him, outlined above, was incorrect. Specifically, he argues that when evidence suggests a defendant committed other criminal acts, the jury should be instructed that those acts cannot be considered as proof that the defendant committed the crime charged. He further claims the limiting instruction that was given was untimely.

{¶ 35} We first note that the parties agreed to the limiting instruction given by the court and that counsel did not object to the timing of the instruction. Thus, Howell has waived all but plain error. In order to find plain error there must be an obvious error and a determination that the error was prejudicial. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. The Supreme Court of Ohio has stressed that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53

Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. The party asserting plain error has the burden of proving it, and courts may reverse on this basis only if the "outcome 'would have been different absent the error.' " *Payne* at ¶ 17, quoting *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

{¶ 36} The trial court gave the jury the following agreed limiting instruction:

Ladies and gentlemen, you have heard testimony that Defendant, Dakota Howell, was aware of other allegations against him of inappropriate sexual behavior towards other women. This testimony is only to be considered by you to assist you in determining the credibility of Defendant, Dakota Howell. It is not to be considered by you for any other purpose.

Tr. p. 312.

{¶ 37} The instruction is similar to the following instruction set forth in Ohio Jury Instructions (OJI) regarding credibility and other acts:

CREDIBILITY: OTHER ACTS. The court points out that (on direct examination the witness denied that ...) (... on cross-examination the witness volunteered that ...). This statement was not directly related to any issue in this case and the same is true of the answer to the present question; however, the answer is permitted solely for the purpose of helping you to test the credibility or weight to be given his testimony as a witness and for no other purpose.

2 *Ohio Jury Instructions* CR Section 401.23.

{¶ 38} The comments to the instruction state, in pertinent part:

This instruction is designed to be given before the witness is permitted to

answer. The instruction applies to the rare situation where the witness opens the door and invites questioning on an otherwise immaterial fact.

{¶ 39} Howell has not cited an alternate jury instruction that should have been utilized in lieu of the one presented. Further, although a fine distinction, the evidence adduced by the State did not demonstrate that Howell had committed other offenses or bad acts; instead, it was designed to demonstrate that Gaddis had confronted him and claimed that other women had made allegations. The State did not present Gaddis in rebuttal, nor did it offer any witnesses to attest to such behavior. Thus, Howell has failed to demonstrate the need for a statement that the evidence should not be considered as proof that he committed the crime of rape. The instruction given by the trial court was consistent with the instruction used when a party is permitted to impeach a witness's credibility. The instruction properly informed the jury that the evidence could only be used for determining Howell's credibility and for no other purpose. We must presume that a jury follows the instructions that a trial court issues. *Pang v. Minch*, 53 Ohio St.3d 186, 195, 559 N.E.2d 1313 (1990). We find no error in the instruction given by the trial court.

{¶ 40} While Howell is correct that the instruction was designed to be presented to the jury prior to permitting the witness to answer a question designed to impeach his credibility, we cannot discern any prejudice stemming from the fact that the trial court issued the instruction following Howell's testimony.

{¶ 41} The third assignment of error is overruled.

## V.     Sufficiency and Manifest Weight of the Evidence

{¶ 42} Howell's fourth assignment of error provides:

THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 43} In this assignment of error, Howell challenges both the weight and the sufficiency of the evidence by arguing that C.B. was not credible and that there was no physical evidence to corroborate her testimony.

{¶ 44} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

An appellate court's function when reviewing the sufficiency of the evidence

to support a criminal conviction is to examine the evidence admitted at trial

to determine whether such evidence, if believed, would convince the

average mind of the defendant's guilt beyond a reasonable doubt. The

relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Id.* at paragraph two of the syllabus.

{¶ 45} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether

a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.) *Martin* at 175.

{¶ 46} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 47} Howell was convicted of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" includes "vaginal intercourse between a male and female." R.C. 2907.01(A). There is no dispute that Howell and C.B. had vaginal intercourse, as Howell admitted to the act when he stated the two engaged in consensual sex. There is also evidence upon

which the jury could have reasonably concluded that Howell exerted force to compel C.B. to submit. Specifically, C.B. testified she was lying on her stomach and that Howell got on top of her when he "forcefully" pulled down her leggings and penetrated her vagina with his penis. Tr. p. 80.

{¶ 48} Howell claims C.B.'s testimony was not credible because she made contradictory statements about the offense. He also claims she was not credible because she testified there were no chairs in Howell's apartment. Finally, he claims that C.B. was inherently incredible because she delayed reporting the offense and because she and Howell had a past history of sexual relations.

{¶ 49} We note the jury was made aware of all of the statements which Howell argues were contradictory. We also note that C.B. was given the opportunity to explain any perceived inconsistencies. The jury was also aware of her testimony regarding the chairs in the apartment and was able to contrast that with the testimony of others that there were folding chairs in the apartment. Likewise, the jury heard evidence regarding the past relationship between C.B. and Howell as well as the delay in reporting the offense.

{¶ 50} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier

of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way." *State v. Bradley*, 2d Dist. Champaign No. 97 CA 03, 1997 WL 691510, *4 (Oct. 24, 1997).

**{¶ 51}** The jury heard all of Howell's claimed inconsistences and contradictions and still chose to credit C.B.'s testimony. As stated, C.B.'s testimony sets forth a sufficient basis for concluding that Howell committed the offense of rape.

**{¶ 52}** Finally, with regard to physical evidence, it is well established that physical evidence is not required to support a conviction for rape against a manifest weight challenge. *State v. West*, 10th Dist. Franklin No. 06AP-11, 2006-Ohio-6259, ¶ 18; *State v. Thomas*, 2015-Ohio-5247, 54 N.E.3d 732, ¶ 31 (9th Dist.); *State v. White*, 3d Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 54; *State v. Williams*, 2017-Ohio-8898, 101 N.E.3d 547, ¶ 19 (1st Dist.). Accordingly, the fact that Howell's conviction was based solely on C.B.'s testimony and not any physical evidence does not render his conviction against the manifest weight of the evidence.

**{¶ 53}** We cannot say Howell's conviction was against the manifest weight of the evidence and thus, we must also conclude there was sufficient evidence to sustain the conviction.

**{¶ 54}** The fourth assignment of error is overruled.

## VI. Law Enforcement Website

**{¶ 55}** Howell asserts the following for his fifth assignment of error:

HOWELL WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN DETECTIVE

HARTWELL TESTIFIED ABOUT RETRIEVING HOWELL'S ADDRESS

OFF A "LAW ENFORCEMENT INFORMATION WEBSITE."

{¶ 56} Howell contends he was unfairly prejudiced when Hartwell testified he used a law enforcement information website when attempting to locate Howell.

{¶ 57} As noted above, during his testimony about his attempts to locate Howell, Hartwell stated, "I looked him up on a law enforcement information website that provides past residences for people." Tr. p. 177. No objection was made. Thus, our review is limited to a plain error analysis.

{¶ 58} We note that Hartwell made only the one mention of the website during his testimony. The statement solely concerned Hartwell's attempts to locate Howell during the investigation. Hartwell's attempts at contact were relevant to the case because, throughout the trial, Howell focused on Hartwell's alleged failure to timely contact him regarding the offense. Further, Hartwell did not assert the site was used solely to search for persons who had criminal records or arrests. Indeed, his testimony could have been construed as merely indicating there was a law enforcement website that could be used for locating addresses of anyone. Finally, Ohio law has generally held that testimony concerning police investigations is admissible at trial. *See State v. Bailey*, 8th Dist. Cuyahoga No. 81498, 2003-Ohio-1834, ¶ 27-29.

{¶ 59} We cannot find error, let alone plain error, on this record. Therefore, the fifth assignment of error is overruled.

## VII. Ineffective Assistance of Counsel

{¶ 60} Howell's sixth assignment of error states:

HOWELL WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL

AT TRIAL.

{¶ 61} Howell contends that his trial counsel was ineffective because he failed to (1) properly cross-examine C.B.; (2) request the proper limiting instruction concerning the admission of prior allegations of sexual misconduct; and (3) object to Hartwell's testimony regarding the fact that he used a law enforcement website to obtain Howell's address.

{¶ 62} "Reversal of a conviction for ineffective assistance of counsel requires that the defendant show first that counsel's performance was deficient and second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 74, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, a defendant must show that trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688. To establish prejudice, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688, 694. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697. In our review of an ineffective assistance of counsel claim, "we will not second-guess trial strategy decisions, and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. English*, 2d Dist. Montgomery No. 26337, 2015-Ohio-1665, ¶ 10, quoting *State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it

looks as if a better strategy had been available." *Id.*, citing *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 63} We first turn to the claim that trial counsel failed to conduct an adequate cross-examination of C.B. Specifically, Howell claims that C.B.'s testimony contradicted statements she made to Hartwell during the investigation of the offense. Thus, Howell contends that trial counsel should have played the recording that Hartwell made of those statements. He contends that "the failure to play the recording in front of the jury affected the impact [of the impeachment because C.B.'s] own voice impeaching herself would have impacted [her] credibility highly."

{¶ 64} This recording is not a part of the record before us, thus we cannot determine whether it would have had a greater impact on the jury than merely confronting C.B. about the alleged inconsistencies. Further, it is entirely possible that the recording contained other information that counsel did not want presented to the jury. In any event, the jury was made fully aware of the alleged inconsistencies between C.B.'s testimony and the statements made to Hartwell. Thus, we cannot say on this record that counsel was deficient in this regard.

{¶ 65} We next turn to the claim that counsel failed to request a proper limiting instruction regarding the allegations of sexual misconduct involving other women. Given our disposition of the third assignment of error, we conclude that counsel's conduct did not fall below an objective standard of reasonableness.

{¶ 66} Finally, we turn to the claim that counsel was ineffective because he failed to object when Hartwell mentioned his utilization of a law enforcement website. We note that Hartwell did not state the site was limited to individuals with criminal records or

arrests.   Indeed, it is possible that the jurors, based on this statement, believed that law enforcement has a website that permits the police to look up past residences for anyone. Also, Hartwell made only one brief mention of the site during his more than 40-page testimony.   Importantly, it is entirely possible that trial counsel made a strategic decision to forego an objection because he did not wish to emphasize the statement by objecting or seeking a limiting instruction.   Thus, we cannot say that counsel acted unreasonably by failing to object.

{¶ 67} On this record, we cannot conclude trial counsel's performance fell below an objective standard of reasonableness.   Therefore, we conclude Howell has failed to demonstrate that counsel was ineffective.   Accordingly, the sixth assignment of error is overruled.

## VII.   Conclusion

{¶ 68} All of Howell's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J., concurs.

DONOVAN, J., dissents:

{¶ 69} I dissent.   The courts of this State have long recognized that evidence of other acts evidence "carries the potential for the most virulent kind of prejudice for an accused * * *."   *State v. Snowden,* 49 Ohio App.2d 7, 8, 359 N.E.2d 87 (1st Dist.1976).

{¶ 70} In my view, the trial court erred when it permitted the State to question Howell about a hearsay statement which suggested there were other unspecified

allegations of sexual misconduct. These purported allegations were not attested to by the purported victims and/or anyone who allegedly witnessed the misconduct. The prosecuting attorney, by means of innuendo and suggestion of unidentified general sexual misconduct, was permitted to lead the jury to believe that the defendant should be found guilty of rape because of other non-specific purported allegations. Under the standard used in this case by the majority, "almost any positive comment a defendant could make about himself or herself would open the door to every possible or even speculative misdeed he or she ever committed or was even alleged to have committed." *State v. Jalowiec,* 91 Ohio St.3d 220, 244, 744 N.E.2d 163 (2001). (Lundberg Stratton, J., concurring in part and dissenting in part). Howell's initial statement ostensibly did no more than suggest no other complaint led to a rape warrant. A "door opening" interrogation is not without its limits, and the State overstepped herein. "If the basis upon which other act evidence is inadmissible under R.C. 2945.59 and Evid.R. 404(B) is interpreted too loosely, there is no limit to what other acts evidence is admissible." *State v. Clemons,* 94 Ohio App.3d 701, 711, 641 N.E.2d 778 (12th Dist. 1994).

{¶ 71} As was noted in *State v. Richardson*, 8th Dist. Cuyahoga No. 50424, 1986 WL 5124, *2 (May 1, 1986), we should recognize "a limited privilege to elicit complete and accurate information, once the party opponent has irrefutably 'opened the door.' " This is not what was permitted here. Rather, only unspecified hearsay allegations were suggested. " 'This concept of "opening the door" or "invited error" has been widely used to justify ignoring rules of evidence.' " *Id.* at *3, quoting 1 Weinstein, Evidence (1985) 103-15 to 103-16, Section 103[02]. Evid.R. 608(B) allows, in the trial court's discretion, inquiry on cross-examination of specific instances of a witness's conduct to attack the

witness's character for truthfulness or untruthfulness. No specific instance was identified, and the State did not even investigate Gaddis's accusation in an attempt to verify the unspecified allegations.

{¶ 72} It is well established that when a defendant in a rape case opens the door by referencing his or her character or past behavior – regardless of whether this behavior was sexual activity or other acts – the prosecution "may call as rebuttal witness[es] individuals who have observed a defendant engage in acts that were inconsistent with his assertions." *State v. Hardie,* 2d Dist. Montgomery No. 19954, 2004-Ohio-6783, ¶ 21, citing *State v. Agner,* 135 Ohio App.3d 286, 293, 733 N.E. 2d 676 (3d Dist. 1999); *State v. Banks*, 71 Ohio App.3d 214, 219-220, 593 N.E.2d 346 (3d Dist.1991). *See also Holt v. State,* 107 Ohio St. 307, 140 N.E. 349 (1923); *State v. Howton,* 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 29. However, this is not what the trial court permitted in Howell's case. Witnesses to sexual misconduct and/or victims thereof were not called nor interviewed. Rather, a wholly non-specific hearsay assertion was improperly utilized to impugn Howell's character and imply he was a serial rapist. This vague and hearsay "propensity evidence" was highly prejudicial to Howell.

{¶ 73} I would reverse.

Copies sent to:

David M. Morrison
Lucas W. Wilder
Hon. Michael A. Buckwalter