OPINION
{¶ 1} C.C. appeals the judgment of the Clark County Probate Court in the termination of parental rights proceeding held pursuant to a petition to adopt D.M.N. *Page 2 
and J.M.N., two of her children, filed by S.N., the children's biological father, and his wife, the children's step-mother, V.N., together "petitioners."[1] In the petition, they asserted that C.C.'s consent to the adoption was not needed because she had failed to communicate and provide support to the children during the pre-petition year without justifiable cause. The court concluded that she had justifiable cause for her failure to communicate. She did not, however, have justifiable cause for her failure to provide support. Consequently, the trial court ruled that R.C. 3107.07(A) made her consent to their adoptions unnecessary. In her appeal, C.C. argues that the trial court's judgment with respect to its conclusion that she was without justifiable cause for failing to provide support is erroneous. Disagreeing, we affirm.
 {¶ 2} C.C. and S.N. lived together for a time after D.M.N. and J.M.N. were born, but they were never married. Eventually, they separated, and S.N. was subsequently married to V.N. in September 2002. After their separation, C.C. and S.N. *Page 3 
argued continually about issues related to the division of parental responsibilities. Finally, in December 2002, the Domestic Relations Court held a custody hearing. C.C., however, did not attend because she was unable to continue to pay her attorney to represent her. She expressed her concern to the attorney's secretary, who told her not to worry because the hearing would be continued. It wasn't. At the hearing, the court designated S.N. the custodial parent of both children and awarded C.C. visitation rights. The court also ordered C.C. to pay $50.00 per month in child support. C.C. was not told about this order. Moreover, the Child Support Enforcement Agency (CSEA) never received a copy of the order either. Consequently, she did not know that she had been ordered to pay child support. And neither S.N. nor the CSEA ever attempted to collect support payments or otherwise enforce the court's order. Therefore, she never once paid S.N. $50.00, nor did she provide him with any other support for her children. C.C. testified that had she known of the award, she would have complied and made the required payments.
 {¶ 3} S.N. did tell C.C. that he had been awarded custody and she visitation rights. She visited with her children on four occasions, but the visitations abruptly ended when S.N. refused to bring the children to see her. She continued intermittently over the years to ask S.N. to let her see her children, but S.N. essentially rebuffed her each time.
 {¶ 4} After the custody order, C.C. was variously employed by different companies. Also during this time, she struggled with an alcohol abuse problem for which she sought help in rehabilitation programs. She stated, however, that in the year or so preceding the petition hearing, she believed the problem had been overcome. *Page 4 
 {¶ 5} In August 2006, S.N. and V.N. a filed a petition with the probate court asking that V.N. be permitted to adopt D.M.N. and J.M.N. They asserted in the petition that R.C. 3107.07(A) operated to relieve them of the necessity to obtain C.C.'s consent to the adoption because she had failed to both communicate with and provide support to the children, without justifiable cause, during the pre-petition year.
 {¶ 6} After a hearing, the court agreed that C.C. had failed to communicate with her children. But, it concluded that she had justifiable cause for not communicating with them. The court found that, without valid reason, S.N. had failed to comply with the visitation order by refusing to allow C.C. to see her children. This, said the court, constituted significant discouragement and interference. Likewise, the court agreed that C.C. had failed to provide support. Unlike her failure to communicate, however, C.C. was without justifiable cause for failing to provide support to her children. That she was unaware of her judicially-imposed support obligation matters not, concluded the court, because she failed to meet her legally-imposed-by statute and the common law-obligation to provide them with support.
 {¶ 7} Before we begin our analysis, we pause briefly to emphasize the gravity of this case. The object of parental termination proceedings in step-parent adoption petitions is "not simply to infringe upon [the parent's] interest . . . but to end it." Lassiter v. Dept. Social.Servs. Of Durham City (1981), 452 U.S. 18, 21, 101 S.Ct. 2153. That is, "[u]nlike other custody proceedings, it leaves the parent with no right to visit or communicate with the child." Id. Totally and irrevocably is this interest ended. Id. at 39 (Blackmun, J., dissenting). Indeed, "[f]ew consequences of judicial action are so grave." Santosky v.Kramer (1982), 455 U.S. 745, 787, 102 S.Ct. 1388 (Rehnquist, J., *Page 5 
dissenting). We appreciate, therefore, the "commanding" interest that a parent has "in the accuracy and justice" of a trial court's decision.[2] Lassiter, 452 U.S. at 21. For this reason, we give this case, and all those involving the termination of parental rights, the close consideration that is demanded "when a family association so undeniably important is at stake." M.L.B. v. S.L.J. (1996),519 U.S. 102, 117, 117 S.Ct. 555. Mindful of the this, we begin our analysis.
 {¶ 8} C.C. assigns a single error to the trial court's judgment:
 {¶ 9} "THE TRIAL COURT ERRED IN FINDING THAT THE APPELLEES HAD PROVED BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT HAD FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE FOR THE MAINTENANCE AND SUPPORT OF THE CHILDREN FOR A PERIOD OF AT LEAST ONE YEAR PRECEDING THE FILING OF THE ADOPTION PETITIONS."
 {¶ 10} One who seeks to adopt a minor child must ordinarily obtain the consent of both parents. In certain situations, however, consent is not necessary. One such situation is when a parent abandons the child. When a parent abandons her child, the *Page 6 
parent also abandons her rights with respect to the child, including her right of refusal to an adoption.
 {¶ 11} The General Assembly has recognized this, and they have identified two duties that a parent has toward her child that when breached constitute abandonment for adoption purposes: The first is the parent's failure to communicate with the child, and the second is the parent's failure "to provide for the maintenance and support of the [child]." Accordingly, if "for the period of at least one year immediately preceding . . . the filing of the adoption petition," either one, or both, of these is true, and the parent is without justifiable cause for the failure-her consent to the child's adoption is not needed. R.C. 3107.07(A). The petitioner seeking to adopt the child has the burden to prove that at least one of these failures occurred, and then, assuming that the parent asserts justification, the petitioner has the heavy burden to prove a negative, that the parent was without justifiable cause for the failure. The umbrella issue in the instant case focuses on the latter — whether C.C. had justifiable cause that would excuse her failure to provide support to her two children.
 {¶ 12} In reviewing the trial judge's decision, we stress that we are limited to determining whether the trial court's decision is contrary to the manifest weight of the evidence in the record. In re Adoption ofMasa (1986), 23 Ohio St.3d 163, 492 N.E.2d 140. That is, we will let the decision lie undisturbed unless we are unable to find any competent, credible evidence to support it. We do not review it to see if we agree with the conclusions, and we do not review it de novo.
 {¶ 13} The trial judge concluded that, while C.C. had justifiable cause for her failure to communicate, she was without justifiable cause in failing to provide support. *Page 7 
C.C. disagrees, and she argues that she was justified for the principal reason that she did not know that the trial court, in its custody ruling, also awarded child-support.
 {¶ 14} C.C.'s knowledge, or lack thereof, of the support award does not justify her failure to provide support to her children. The resolution of this issue follows the ancient truism ignorantia juris nonexcusat, or ignorance of the law is no excuse. See Einhorn v. Ford MotorCo. (1990), 48 Ohio St.3d 27, 30, 548 N.E.2d 933. The notion that a parent must provide for her child is rooted, most would agree, in something much deeper than the statutory or common law. Indeed, the Ohio Supreme Court has observed that this duty is at root a "principle of natural law." Smith v. Smith, 109 Ohio St.3d 285, 287, 2006-Ohio-2419, citing Pretzinger v. Pretzinger (1887), 45 Ohio St. 452, 458,15 N.E. 471. So robust is the duty, the parent need not even have custody of her child for it to attach. In re Adoption of Kuhlmann (1994),99 Ohio App.3d 44, 50, 649 N.E.2d 1279; R.C. 2151.011(B)(10).
 {¶ 15} The statutory and common law adopt this principle of natural law. More immediately relevant here, R.C. 3103.03 places on a parent the duty to support her minor child.[3] One nuance of the duty under the consent statute is the support that the parent fails to provide be "required by law or judicial decree." R.C. 3107.07(A). We have said that in the absence of a judicial decree, the general statutory duty to provide support to a minor child obliges a parent to do so. In rePlacement for Adoption of C.E.T., Montgomery C.A. No. 19566, 2003-Ohio-3783; see R.C. 3103.03. This, then, is why the fact that C.C. did not know about the court's child-support award is *Page 8 
unimportant to the analysis. Had there been no court order requiring it, she would still have had-and breached-the statutory requirement to provide support. Therefore, her lack of knowledge cannot not give her the justification she needs. Kuhlmann, supra. The duty is born with the child; a judicial decree merely attaches a dollar sign. So the trial court concluded, so we agree.
 {¶ 16} C.C. also directs our attention to several other facts that she submits justified her failure to provide support. First, she suggests that she was justified not providing financial assistance because she lacked the ability. The lack of ability to provide support can justify a failure to provide it. In re Adoption of A.P.L, Montgomery App. No. 19772, 2003-Ohio-4433. After all, "we ought not ask the impossible as a condition of preserving fundamental parental rights." Masa,23 Ohio St.3d at 167. The trial court, however, never found that she lacked the ability to pay support, nor do we find any evidence to support such a finding. The trial court found that she had been employed off and on since the filing of the order to support her children. The court also found that during this time she was battling an alcohol abuse problem, which led her to seek rehabilitation on more than one occasion. Neutralizing this fact, though, is the court's finding that within the year preceding the hearing she felt that she had overcome the problem. Notably, we think that her testimony that she would have paid support had she known of the court order, without qualification as to ability, belies her argument that her financial situation should justify her failure. In sum, while several facts suggest that she had a low income during the relevant year, this is not enough to justify C.C.'s failure to support her children
 {¶ 17} Second, she argues that she was justified because neither S.N. nor *Page 9 
CSEA pursued her for support payments. The duty to provide support to one's minor child is just that, an obligation to support the child. In other words, the duty is properly owed to the child, not the custodian. It follows, then, that a lack of effort by the custodian to collect support payments for the child cannot ordinarily justify the failure to give them. Nor is such an effort a condition precedent to the parent's duty to provide the support.
 {¶ 18} We recognize that we have held that a parent is justified not providing support where the custodian of the child expresses no interest in receiving assistance. See Matter of Adoption of Hadley (May 6, 1991), Greene Cty. App. No. 90 CA 117, 1991 WL 227737. Our rationale in those cases is in accord with the purpose and intent, discussed above, of the consent statute, which is to identify when a parent has abandoned her child. In Hadley, we reasoned that "no such abdication of parental responsibility is suggested by the natural parent's failure to provide financial assistance that is neither needed nor requested." Id. at *3. Specifically, we said that "[w]here a child's needs are being adequately provided for by step-parents, who are in a better financial position than the natural parent, and the step-parents, being aware of the natural parent's financial circumstances, express no interest in receiving financial assistance from the natural parent, we conclude that the natural parent's failure to contribute towards the support of the child is not `without justifiable cause,' for purposes of R.C. 3107.07(A)." Id. We cautioned, in contrast, that "[i]f a parent has any reason to believe that his or her financial assistance may be reasonably necessary for the support of the child, then the failure to provide any financial assistance for a full year evinces such a complete abdication of parental responsibility as to justify the *Page 10 
termination of the parental relationship in favor of adoption."Id. Critically, there must be evidence that the parent made a conscious decision not to provide support based on a reasonable belief that her financial support was unnecessary.
 {¶ 19} In the instant case, we do not think that C.C. made such a conscious decision, nor do we think that the evidence supports-certainly not the manifest weight of the evidence-a finding that C.C. had reason to believe that her support was unnecessary. Tellingly, she does not assert this belief as justification. Equally important, we do not think that the reason S.N. expressed no interest in child support payments was his awareness of her financial circumstances, as this exchange at the hearing shows:
 {¶ 20} "Q. You never brought [C.C] back to Court for contempt for not paying support, did you?
 {¶ 21} "A. No, sir.
 {¶ 22} "Q. The fact is you didn't care if she paid support, did you? The fact is, you wanted her to go away, didn't you?
 {¶ 23} "A. Yeah, I didn't want her to be around my children, yes, sir, that's correct. I didn't feel that it was a good environment for them or safe." (Tr. 41).
 {¶ 24} Lacking the critical evidence found in Hadley, the absence of actions to enforce the court's child-support award is insufficient, by itself, to provide C.C. with justifiable cause.
 {¶ 25} Finally, C.C. argues that the court's conclusion that she was justified for not communicating with her children should bear more heavily on the support analysis. *Page 11 
We disagree. This conclusion would, perhaps, be more relevant if her efforts to provide support to her children had been frustrated, like her efforts to communicate were, by S.N.'s elusiveness. But, the manifest weight of the evidence in the record quite clearly is against such a finding-there is no hint that she ever so much as considered giving S.N. financial assistance to care for her children.
 {¶ 26} After reviewing the record, we do not think that the trial court's conclusion is contrary to the manifest weight of the evidence. There is competent, credible evidence to support the trial court's decision that C.C. was "without justifiable cause" under R.C. 3107.07(A) for failing to support her children. Therefore, we find no error in the trial court's judgment. We overrule C.C.'s sole assignment of error and affirm the judgment of the trial court.
WOLFF, P.J., and FAIN, J., concur.
[1] Although the matter of the children's adoption is, in reality, two separate cases, because the matters are identical, they were briefed by the parties as one, and we consider them so in our decision. Further, by order of 7/24/08, we consolidated these two appeals for purposes of our review.
[2] Under the statute, the effect of a final decree of adoption is to terminate "all parental rights and responsibilities, and . . . terminate all legal relationships between the adopted person and the . . . [parent]." The most feared consequence is candidly stated: the child "thereafter is a stranger" to the parent. R.C. 3107.15(A)(1).
[3] "The biological . . . parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor." R.C. 3103.03(A). *Page 1