[Cite as *In re Adoption of A.M.G.*, 2024-Ohio-2853.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| ADOPTION OF A.G.M. | : | CASE NO. CA2024-02-018 |
| | : | O P I N I O N<br>7/29/2024 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PA22-11-0094

Cook Howard Law, Ltd., and Melynda Cook Howard, for appellant.

Stagnaro Hannigan Koop, Co., LPA, and Michaela M. Stagnaro, for appellee.

**S. POWELL, P.J.**

{¶ 1} This case involves an appeal by a grandmother who sought to adopt her granddaughter. The probate court denied the grandmother's petition on the basis that consent by the child's father was required for adoption.

{¶ 2} When A.G.M. was born in January 2018, her mother ("Mother") was

unmarried. The child's birth certificate listed the father as "unknown" because Mother was unsure who was the child's father. Mother allowed the child to visit with a potential father and his family. Mother also allowed some limited interaction with the man who would eventually be determined to be the child's father ("Father") and his mother ("Paternal Grandmother"). During this time, Mother expressed concern to Father and Paternal Grandmother regarding Father's commitment to the child and his drug use.

**{¶ 3}** In June 2019, Mother was experiencing health issues and felt she needed time to get her life together. Her mother ("Maternal Grandmother") was granted legal custody of A.G.M. with Mother's consent. Mother continued to live with Maternal Grandmother for some time after legal custody was granted and continued to be an active part of the child's life.

**{¶ 4}** In December 2019, Father filed a motion in juvenile court to establish paternity and visitation with A.G.M. Paternity tests established that Father was the child's biological father. Following a pretrial conference, Father filed an amended motion for paternity and visitation on June 11, 2020. The amended petition changed Father's address from Paternal Grandmother's home to another location. On the same date, Paternal Grandmother filed a motion for grandparent visitation. The motion indicated that Father wanted his mother to have a relationship with the child irrespective of the outcome of his own pending motion. The motion and amended motion were filed by the same attorney, who was representing both Father and Paternal Grandmother.

**{¶ 5}** The issue of Paternal Grandmother's visitation was contested between Maternal Grandmother and Paternal Grandmother. Maternal Grandmother and Mother had previously expressed concerns because of Father's drug problem and because he had been incarcerated several times. They did not want the child to be around Father until he made progress on his issues, nor did they want the child exposed to Father during

any visitation granted to Paternal Grandmother. A pretrial order indicated the parties were working towards an amicable resolution.

{¶ 6} At the time of the hearing on the motions for visitation, Father was incarcerated and did not attend the hearing. His motion for visitation was withdrawn, and his counsel's motion to withdraw from representation was granted. The grandmothers presented an agreement to the court on the visitation issue. The juvenile court issued an entry on November 6, 2020, establishing Father as the child's parent and adopting the grandmothers' visitation agreement.

{¶ 7} The visitation agreement provided for gradual, phase-in visitations between the child and Paternal Grandmother. The general terms of the agreement stated that Paternal Grandmother would ensure that Father was not present and would have no contact, in person or by any other medium, during Paternal Grandmother's visitation time. The agreement further stated that "[t]he parties mutually acknowledge the significance of prohibiting contact between [Father] and the child and shall ensure full compliance."

{¶ 8} The agreement specifically stated Father would not be present at Paternal Grandmother's visitations "until he makes an appropriate request to the Court to establish his own visitation rights." Further, Paternal Grandmother could "not use her companionship time to have the effect of introducing father to the child, intentionally or unintentionally." The agreement continued by requiring that Paternal Grandmother "shall not discuss [Father] with the child, allow the child to overhear any discussion regarding [Father] either purposely or by being careless in that regard, and shall not show photos or videos of [Father] to the child with the representation that he is her father." Finally, the agreement stated that the terms of Paternal Grandmother's visitation could only be modified by future court order, mutual written agreement, or on advice of a therapist.

{¶ 9} Visitation with Paternal Grandmother proceeded according to the

agreement. Father did not seek any type of contact with the child, nor did he provide any support for the child. Maternal Grandmother testified that she tried to establish child support in 2021. She testified that she filed for support and gave the agency Father's phone number because she didn't know where he was, but the agency said they couldn't locate Father and no support was ever ordered.

{¶ 10} On November 28, 2022, two years after the visitation agreement was adopted by the juvenile court, Maternal Grandmother filed a petition in probate court to adopt the child. Mother consented to the adoption. Maternal Grandmother alleged that Father's consent was not required because in the year preceding the petition, Father had failed to visit and to support the child. After a hearing on the consent issue, the probate court determined that Father's consent was required because there was justifiable cause for both the failure to support and the failure to contact the child.

{¶ 11} Maternal Grandmother now appeals the probate court's determination that Father's consent to the adoption was required. She raises two assignments of error for our review. The first assignment of error addresses the trial court's finding that there was justifiable cause for the failure to contact, while the second addresses the probate court's finding that there was justifiable cause for the failure to support.

**Law and Standard of Review**

{¶ 12} The right of natural parents to the care and custody of their children is one of the most precious and fundamental in law. *In re Adoption of C.M.F.*, 2013-Ohio-4719, ¶ 8 (12th Dist.). Because adoption terminates the parental rights of a natural parent, Ohio law requires the parent's consent to an adoption unless a specific statutory exemption exists. *In re Adoption of A.N.B.*, 2012-Ohio-3880, ¶ 5 (12th Dist.).

{¶ 13} An exemption to parental consent exists if a court finds, after notice and a hearing, that in the year preceding the adoption petition, the parent failed without

justifiable cause to have more than de minimis contact with the child or the parent failed to provide maintenance and support for the child. R.C. 3107.07(A); *In re Adoption of A.O.P.*, 2022-Ohio-2532, ¶ 14 (12th Dist.). This exemption involves a two-step analysis: (1) whether the parent failed to engage in more than de minimis contact with the child or failed to provide for the maintenance and support to the child in the year immediately preceding the filing of the adoption petition, and (2) whether the parent had justifiable cause for the failure to contact the child or provide maintenance and support for the child. *In re Adoption of C.E.S.*, 2020-Ohio-6902, ¶ 21 (12th Dist.). Because the first element is written in the alternative, the probate court need only find either a lack of contact with the minor or a failure to provide maintenance and support to the minor. *In re Adoption of O.J.B.*, 2020-Ohio-4184, ¶ 9 (12th Dist.).

{¶ 14} The petitioner in an adoption proceeding bears the burden of proving the elements of a consent exemption by clear and convincing evidence. *In re Adoption of M.G.B.-E.*, 2018-Ohio-1787, ¶ 31. After the petitioner has established a parent's lack of contact or support, the parent bears the burden of going forward with evidence to show a facially justifiable cause for the failure, although, the burden of proof remains on the petitioner. *Id.*; *In re Adoption of A.O.P.* at ¶ 15.

{¶ 15} When reviewing a probate court's decision on parental consent, an appellate court applies two different standards of review. *Id.* at ¶ 11. An abuse of discretion standard of review applies to the probate court's decision as to whether a parent's contact with his or her child, or provision of maintenance and support for the child, met the statutory standard. *In re Adoption of C.E.S.* at ¶ 22. However, the probate court's decision on whether a parent had justifiable cause for the failure to contact or provide maintenance and support to the child is reviewed under a manifest weight of the evidence standard. *Id.* at ¶ 23.

- 5 -

{¶ 16} When conducting a manifest weight review, this court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment. *In re Adoption of E.G.C.*, 2022-Ohio-2381, ¶ 16 (12th Dist.). In applying this standard, however, this court must be mindful that the probate court "is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony." *In re Adoption of C.A.L.*, 2015-Ohio-2014 (12th Dist.).

{¶ 17} **Assignment of Error Number 1**

**THE PROBATE COURT ERRED IN FINDING FATHER HAD JUSTIFIABLE CAUSE FOR HIS FAILURE TO PROVIDE MORE THAN DE MINIMUS CONTACT WITH A.G.M.**

{¶ 18} In her first assignment of error, Maternal Grandmother argues that the court erred in determining there was justifiable cause for Father's failure to communicate with A.G.M. in the one year preceding the adoption petition. The evidence was undisputed that Father had failed to communicate in any manner with the child since sometime prior to the juvenile court's visitation order. However, as mentioned above, even if a parent has completely failed to communicate with his child during the one-year statutory period, his consent will still be required if there is justifiable cause for the failure. *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985); *In re M.G.B.-E.*, 2019-Ohio-753, ¶ 12 (12th Dist.).

{¶ 19} Typically, a noncustodial parent has justifiable cause for failing to communicate when the person with custody of the child significantly interferes with or significantly discourages communication. *In re Adoption of M.G.B.-E.*, 2018-Ohio-1787, ¶ 39. A no-contact order can also act as the basis of a justifiable cause finding. *See In re Adoption of T.U.*, 2020-Ohio-821, ¶ 27 (6th Dist.).

{¶ 20} The trial court determined that although Father failed to communicate with

- 6 -

A.G.M., the juvenile court's visitation order prohibited Father from contact with the child. The probate court found a recent Ohio Supreme Court case controlling when a no-contact order exists and provides justifiable cause for the failure to communicate. *In re Adoption of A.K.*, 2022-Ohio-350. The probate court found that although the visitation order related to Paternal Grandmother's visitation with the child, it had the same effect as a no-contact order on Father, because he could not contact the child through Paternal Grandmother, and Maternal Grandmother was unwilling to provide contact.

{¶ 21} However, our review of the record mandates a contrary conclusion. Although we recognize that the trial court was in the best position to view the witnesses and make credibility determinations, our conclusion does not rely on witness credibility, but instead on the juvenile court's order and the undisputed facts of the case.

{¶ 22} As mentioned above, the juvenile court's order regulated visitation between Paternal Grandmother and the child. The order addressed what Paternal Grandmother could not do regarding Father during her visitation time. Although Paternal Grandmother was prohibited from allowing Father to visit or communicate during her visitation time, nothing in the order prevented Father from communicating with the child through Maternal Grandmother or from seeking his own visitation time in another manner. In fact, the visitation order provided a mechanism for Father to communicate with the child when it stated that Father could not be present at Paternal Grandmother's visitations "until he makes an appropriate request to the Court to establish his own visitation rights." Although Father's visitation request was withdrawn at the time the juvenile court issued Paternal Grandmother's visitation order, the order clearly envisions a mechanism for Father to have communication with A.G.M. in the future and does not foreclose that possibility. Father did not do so, however. There is no indication in the record that Father desired or sought contact with child after the visitation order was issued.

- 7 -

**{¶ 23}** Although Father testified that he never read the order and relied on his mother regarding the contents of the order, if Father desired contact, he could have taken steps to clarify his rights, or to change the visitation order with the juvenile court. *In re Adoption of C.A.L.*, 2015-Ohio-2014, ¶ 39. Accordingly, we find that Father cannot rely on the visitation order to excuse his failure to communicate, or at least attempt to communicate, with A.G.M. because, unlike a no-contact order, the visitation order in this case did not prohibit Father from seeking visitation or communication through other means.

**{¶ 24}** We note that in determining whether a parent's consent to the adoption of his child is required, the purpose of the consent provision in the adoption statutes is to determine when a parent has abandoned his own responsibilities to his child. *In re Adoption of M.M.R,* 2017-Ohio-7222 (2d Dist.). Ohio law recognizes that the right to a legal parent/child relationship carries with it attendant duties and obligations. *In re Adoption of A.N.L.*, 2005-Ohio-4239 (12th Dist.). A parent's failure to fulfil these duties evidences a lack of commitment by the parent to his parental responsibilities. *See In re Zschach*, 75 Ohio St.3d. 648, 651 (1996). The first of these duties is the duty to communicate and when a parent abandons the child by failing to communicate, the parent abandons his rights with respect to the child, including the right to refuse consent to an adoption. *In re Adoption of J.M.N.*, 2008-Ohio-4394, ¶ 10 (2d Dist.). Therefore, the focus of our inquiry is whether Father himself abandoned his parental duty toward the child by failing to communicate. While the record indicates Father wanted Paternal Grandmother to have visitation, nothing in the record evidences a desire on Father's part to be involved in the life of his child.

**{¶ 25}** Accordingly, we find that the trial court erred in determining that Father had justifiable cause for his failure to communicate with the child. Maternal Grandmother's

first assignment of error is sustained.

**{¶ 26} Assignment of Error Number 2**

**THE TRIAL COURT ERRED IN FINDING APPELLEE FATHER HAD JUSTIFIABLE CAUSE FOR HIS FAILURE TO PROVIDE MAINTENANCE AND SUPPORT FOR A.G.M. FOR THE YEAR PRIOR TO THE FILING OF THE PETITION FOR ADOPTION.**

**{¶ 27}** The second parental obligation recognized by the adoption statute is the duty of financial support. In Ohio, there are two statuses of parental support obligations. *In re Adoption of B.I.*, 2019-Ohio-2450, ¶ 27. First, R.C. 3103.03 provides a general obligation of parents to support their children. *Id.* Second, there is a specific child-support obligation imposed by judicial decree that supersedes the general obligation. *Id.* In this case, no judicial decree required Father to pay child support; therefore, he was under a general obligation to support his child.

**{¶ 28}** The facts are undisputed that Father failed to provide any type of support for A.G.M. during the year preceding the adoption petition. The trial court determined that Father had some earned income that he chose to spend on illegal drugs and Father could have provided "at least intermittent or casual support" for the child. However, the court determined there was justifiable cause for the failure to support because Father "had no reason to doubt that the child was in comfortable circumstances" and nothing in the record shows Father was unwilling to support the child.

**{¶ 29}** Both this court and the Ohio Supreme Court have previously recognized that key factor in determining whether there is justifiable cause for a parent's failure to support his child is the parent's ability to pay. *In re Adoption of Masa*, 23 Ohio St.3d 163, (1986); *In re Adoption of A.O.P.*, 2022-Ohio-2532, ¶ 27. In considering this issue, there is a "factual difference between a parent who is unwilling but able to support and a parent who is willing to support but unable to do so." *Masa* at 166.

- 9 -

{¶ 30} We begin by recognizing that the evidence presented at the hearing regarding Father's income is less than precise. Father testified that at the time of the hearing he was making $11 an hour working at Burger King and that he worked about 55 hours a week. Father's W2 forms for 2022 show $12,880.68 in income. Father testified that this income was earned between April to August 2022, which is during the relevant one-year lookback period, indicating Father had the ability to pay some form of support. Father admitted that none of his earnings were used for supporting A.G.M., but further admitted that he used his income for food, alcohol, cigarettes, drugs, and an attorney for his criminal case. Regardless, we agree with the trial court's determination that Father had some amount of income he could have used for support of A.G.M. in some manner.

{¶ 31} The trial court cited an Eighth District Case for the proposition that "when a child's needs are adequately provided for by a custodian who is in a better financial position than the natural parent, the natural parent's failure to support the child may be deemed justifiable." *In re Adoption of A.K.* 2020-Ohio-3279, ¶ 23 (8th Dist.). However, Father did not testify that he failed to provide support because A.G.M. was adequately provided for. He stated that he did not pay child support because none was ordered. In addition, no evidence was presented at the hearing that Maternal Grandmother was in a better financial position to provide for the child.

{¶ 32} Moreover, the cases following the principle above generally include facts other than the relative financial position of the parties. For example, in the case cited by the trial court, the father was incarcerated with little income and the custodial grandparents turned down offers of support from paternal relatives. *A.K.* at ¶ 24; See also *In re E.W.H.*, 2016-Ohio-7849, ¶ 46, (4th Dist.) (mother incarcerated, then in rehab program with no income, had not worked in number of years and children in custodial grandparents' home with father, who said not to worry about child support obligation); *In*

- 10 -

*re Adoption of LaValley*, 1999 Ohio App. LEXIS 3205, at *5 (2d Dist. July 9, 1999) (mother financially unable to support sent a few toys and children were taken care of and no support requested).

**{¶ 33}** In addition, while Maternal Grandmother did not establish a child support order or ask Father directly for support, a request for support by a custodian is not a condition precedent to the duty to provide support for one's child. *In re Adoption of J.M.N.*, 2008-Ohio-4394, ¶ 17. As mentioned previously, the purpose of the consent statute is to identify when a parent has abandoned his child. To constitute justifiable cause for the failure to support, there must be some indication that the parent made a conscious decision not to provide support based on facts which indicate that financial support was unnecessary. *Id.* at ¶ 18.

**{¶ 34}** Finally, we note that Father testified at the hearing, and also argues on appeal, that he filed two "motions" to establish child support. However, we note that these "motions" were actually forms captioned "Application for Child Support Services" which appear to be one of the forms required by the juvenile court when filing for visitation. In addition, the "second" form was part of Father's amended request for visitation which changed his address, not a wholly new filing. When Father withdrew his motion for visitation, child support was not considered. Under these circumstances, these forms alone do not evidence a desire on Father's part to fulfill his parental responsibility of support.

**{¶ 35}** Considering the evidence and arguments related to the support issue, the record shows that Father had the ability to support A.G.M. in some manner, but nothing evidences Father had a willingness to do so or took any meaningful steps in that regard. Accordingly, we find the trial court erred in determining Father had justifiable cause for his failure to support his child. Maternal Grandmother's second assignment of error is

sustained.

## Conclusion

**{¶ 36}** We reiterate the requirement that a court's decision at the consent phase in adoption proceedings must focus on whether Father's actions or inactions are such that they preclude his consent from being required for the adoption. Our conclusion that Father's consent to A.G.M.'s adoption is not required results from Father's failure to responsibly carry out the legal duties and obligations of a parent. Father could have taken steps to establish a relationship with A.G.M., or at a minimum, inquired regarding that possibility. He did not. Likewise, Father could have provided some manner of support, or at a minimum, inquired regarding the necessity of support. Again, he did not.

**{¶ 37}** Accordingly, we reverse the probate court's determination that Father's consent to the adoption of A.G.M. by Maternal Grandmother is required. The case is remanded to the trial court to proceed to a hearing to determine whether the adoption is in the best interest of the child.

**{¶ 38}** Judgment reversed and remanded.

PIPER and M. POWELL, JJ., concur.