[Cite as *In re Adoption of W.E.B.*, 2025-Ohio-4764.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
CARROLL COUNTY


IN THE MATTER OF:  ADOPTION OF W.E.B.

AND ADOPTION OF H.R.B.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CA 0987

---

Civil Appeal from the
Court of Common Pleas, Probate Division, of Carroll County, Ohio
Case Nos. 20255003 and 20255004

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

**JUDGMENT:**
Affirmed.


*Atty. Kelly Murray*, for Appellant


*Atty. Robert G. Abney*, for Appellees


Dated:  October 16, 2025

_____

**WAITE, J.**

{¶1}   Appellant E.B. is the natural father of minor children W.E.B. and H.R.B. Appellant appeals a judgment entry from the Carroll County Court of Common Pleas, Probate Division, holding that Appellant's consent was not necessary in the children's adoption proceedings.   The stepfather of the children, T.C.B., filed two petitions for adoption.   Stepfather alleged that Appellant's consent was not necessary because Appellant failed to provide more than de minimis contact with the children in the twelve months preceding the adoption petitions.   Appellant agrees that he had no contact with the children, but argues that his lack of contact was justifiable due to the mother's interference.   The record does not support Appellant's argument, and the judgment of the trial court is affirmed.

Facts and Procedural History

{¶2}   On March 13, 2025 D.R.B. (Mother) and her husband (Stepfather) filed two petitions for adoption of W.E.B. and H.R.B., ages six and eight respectively.   While Appellant is the natural father of the children, Appellant and Mother were never married, and their relationship terminated in November of 2020.   Child support was ordered at that time but Appellant is $4,000 in arrears in child support.   Mother married Stepfather in August of 2024.   Appellant has one other child unrelated to Mother, a daughter who is eighteen years old.

{¶3}   Appellant has never established or requested court-ordered parenting time, visitation, or custody of the children.

Case No. 25 CA 0987

**{¶4}** A hearing was held on June 18, 2025, to determine if Appellant's consent to the children's adoption was necessary. The parties were represented by counsel. Mother had previously consented to the adoption. Mother and Appellant testified at the hearing. Other witnesses included the children's paternal grandparents, and Appellant's sister.

**{¶5}** Appellant admitted he had no contact, nor did he request contact, with the children for the past two years. (6/18/25 Tr., p. 50-51.) Appellant testified that Mother moved with the children without providing him with a new address, blocked his cell phone number from her cell phone, and unilaterally ended his visits with the children, which would take place at his parents' house. He testified that he was afraid of being arrested or confronted by the police if he communicated with the children. He testified that for two years he never contacted Mother regarding visitation.

**{¶6}** Mother testified that her block of his phone was only temporary, from September of 2021 until May of 2022, and that there was valid cause for blocking his calls. She testified that Appellant's family knew her new address and remained in contact with her. She testified about Appellant's alcoholism and violent behavior. She testified that when Appellant was abusing alcohol she feared for the safety of the children. Despite her fear, she arranged for weekly visits between Appellant and the children at Appellant's parents' house. However, Appellant did not always appear at visitation. Mother testified that she never refused a request from Appellant to visit or have contact with the children, although she also testified that she ended weekly visitation in July of 2021 after Appellant showed up drunk at a family party. She testified that he became violent, caused harm to his nephew, and attempted to drive drunk after forcing his older daughter into his vehicle.

She testified that Appellant has not attempted to contact her since she unblocked his phone number in May of 2022. Mother testified that Appellant never attempted to obtain court-ordered visitation with the children. She said there were no orders that existed to prevent Appellant from visiting the children.

{¶7} The court issued its judgment on July 1, 2025. The court found by clear and convincing evidence that Appellant failed without justifiable cause to provide more than de minimis contact with W.E.B. and H.R.B. for a period of at least one year immediately preceding the filing of the adoption petitions. The court held that Appellant's consent to adoption was not required. This appeal was filed on July 25, 2025. Appellant raises one assignment of error.

{¶8} We note a probate court ruling that a parent's consent to adoption is not necessary pursuant to R.C. 3107.07 is a final appealable order. *In re Adoption of Greer*, 70 Ohio St.3d 293, 298 (1994).

<u>ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED IN FINDING FATHER'S CONSENT WAS NOT REQUIRED FOR THE ADOPTION OF HIS CHILDREN DUE TO LACK OF JUSTIFIABLE CAUSE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} Appellant argues that his consent was required in order for the adoption petitions to be approved. Although Appellant concedes that he failed to provide more than de minimis contact with his children in the twelve months prior to the filing of the adoption petitions, he contends that he had a valid justification for this failure.

<u>Case No. 25 CA 0987</u>

**{¶10}** Appellant's argument is premised on his basic right as a natural parent over the care of his children. "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165 (1986), citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753 (1982). Adoption terminates those rights. R.C. 3107.15(A).

**{¶11}** The consent of a child's biological parents is generally required in support of a petition for adoption. R.C. 3107.06. However, R.C. 3107.07(A) provides a statutory exception to this general rule. Consent is not required if the court "finds by clear and convincing evidence that the parent has failed without justifiable cause to have more than de minimis contact with the minor . . . for a period of one year immediately preceding the filing of the adoption petition." Clear and convincing evidence requires that the proof must "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985).

**{¶12}** "Whether a parent failed to have more than de minimis contact with the child for the requisite one-year period is a question of fact to be decided on a case-by-case basis." *In re Adoption of B.R.R.*, 2024-Ohio-478, ¶ 46 (7th Dist.), citing *In re Adoption of M.B.*, 2012-Ohio-236, ¶ 21. Because Appellant conceded this point, the trial court was correct in finding that Appellant did not have contact with his children for at least the twelve month period prior to the filing of the adoption petitions. Appellant admitted he had no contact for two years.

**{¶13}** Even if a parent has not had contact with his or her children for the twelve months prior to the filing of the adoption petition, the parent may argue that there was justifiable cause for the lack of contact. "Whether justifiable cause has been proven by

clear and convincing evidence is a separate issue the determination of which will only be reversed on appeal if it is against the manifest weight of the evidence." *In re Adoption of F.A.*, 2015-Ohio-2249, ¶ 9 (9th Dist.). Even when a court is determining whether a parent had justifiable cause for failing to maintain contact with his child, the focus of the inquiry is still whether the parent abandoned his parental duty to communicate with the child. *In re Adoption of A.G.M.*, 2024-Ohio-2853, ¶ 24 (12th Dist.).

{¶14} "Ohio courts have held that justification of a parent's failure to communicate with his or her child is shown when there has been 'significant interference' with a parent's communication with a child or 'significant discouragement' of such communication." *In re Kr.E.*, 2006-Ohio-4815, ¶ 21 (9th Dist.), citing *In re Adoption of Holcomb*, paragraph three of the syllabus. "Determining whether an interference is significant requires a court to look at the particular facts of the case at hand and also to consider the custodial parent's conduct and the noncustodial parent's efforts." *In re Doe*, 123 Ohio App.3d 505, 509 (9th Dist. 1997).

{¶15} "Once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner." *In re Adoption of Bovett*, 33 Ohio St.3d 102 (1987), paragraph two of the syllabus.

{¶16} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being

against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶17} Appellant alleges four reasons he believes provide him justifiable cause for failing to maintain any contact with his children. First, he alleges that Mother blocked his texts and calls. The record indicates that in September 2021, Mother received a belligerent text message from Appellant. Mother blocked Appellant's phone number on her cell phone after she received that message, but unblocked it in May of 2022. (6/18/25 Tr., p. 16.) Mother testified that Appellant made no attempt to contact her or the children after she unblocked his phone number. Mother testified that she has had the same phone number, the same email address, and the same social media accounts for sixteen years. Mother also testified that Appellant's parents were in contact with her, knew where she lived, and continued to have contact with the children. Therefore, it cannot be said that Mother significantly interfered with Appellant's ability to contact the children by temporarily blocking his cell phone number three years prior to the filing of the adoption petitions. We agree with Appellee that Appellant did not even allege at the June 18, 2025 hearing that Mother blocked his phone calls at any point during the year preceding the filing of the adoption petitions.

{¶18} It is also clear that it was Appellant's behavior that caused Mother to temporarily block his phone calls and texts. The court may consider whether the parent who is alleging justifiable cause for failing to communicate with the children was at fault in creating the situation that prevented contact and communication. *Frymier v. Crampton*, 2002-Ohio-3591 (5th Dist.), *2. "[J]ustice requires that we not ignore the reason appellant was put into his current position." *Id.* "A failure to contact subsequent to the issuance of

an order of protection is not justified where father's own actions were the cause of the order." *In re Adoption of J.L.*, 2019-Ohio-366, ¶ 38 (1st Dist.); *see also*, *In re Adoption of I.M.M.*, 2016-Ohio-5891 (5th Dist.). A mother's limited actions to interfere with or discourage contact with the children must be looked at in light of the father's actions. These include the father taking few or no steps to reestablish contact; the father's threats, violent behavior, alcoholism, and other conduct causing the mother to limit contact; the father's reliances on a mistaken belief that contact was legally prohibited; and whether the mother's actions created only a temporary interference with contact. *In re Adoption of J.L.*, 2019-Ohio-366, ¶ 35-39 (1st Dist.).

{¶19} The record indicates that Appellant and Mother ended their relationship due to Appellant's alcoholism. Appellant was consuming a 36-pack of beer every two or three days. Due to his apparent alcoholism, arrangements were made for Appellant to visit the children only at his parents' house when they could supervise the visitation. Appellant agreed with this arrangement. Appellant's mother testified that Appellant would fall asleep while standing up when he was supposed to be watching the children. The visitation arrangement lasted until July of 2021, when Appellant showed up drunk at a family gathering. He wanted to drive his older daughter away from the gathering while he was intoxicated. The family would not allow it, leading to a violent altercation between Appellant and his brothers. W.E.B. and H.R.B. witnessed these events. It was in this context that Mother received a belligerent text from Appellant in September of 2021. She also discovered Appellant had been involved in other violent encounters. He got into a fight at a strip club and the extent of his injuries required him to have his jaw wired shut.

The record supports finding that Mother was concerned about the safety of the children, and this led her to temporarily block Appellant's cell phone number.

{¶20} The temporary nature of this block which occurred more than two years prior to the filing of adoption petitions, along with Appellant's behavior prior to the block, supports a conclusion that the trial court did not err in failing to view the blocked phone number as significant justification for failure to contact the children.

{¶21} Appellant's second argument is that Mother blocked the calls of his family members, but the record does not support this assertion. While Appellant's mother testified that Mother stopped answering her calls at some point, she did not recall when or how often she tried to phone Mother. Appellant's sister testified that Mother never stopped accepting communication from her. (6/18/25 Tr., p. 123.) Mother testified that Appellant's parents were able to contact her, would ask to see the children, and she would allow them to see the children. She testified that Appellant's assertions to the contrary were untrue. Clearly the trial court believed the testimony of Mother and Appellant's sister, and as Appellant's mother's testimony was equivocal at best, the record does not support any basis for his arguments in this regard.

{¶22} Appellant's third argument is that Mother moved out of Carroll County without notifying him or his family members. The record contradicts Appellant's assertion. Although Mother did not notify Appellant of her move, his parents and other family members knew of the move and were given her new address. (6/18/25 Tr., p. 23.) Appellant's parents were able to contact Mother. (6/18/25 Tr., p. 23.) The record shows that Appellant also moved to Michigan without notifying Mother. Mother's decision to move to another Ohio county without notifying Appellant, but with the knowledge of his

family, cannot be seen as significant interference with Appellant's ability to maintain contact with the children.

**{¶23}** Appellant's fourth argument is that Mother threatened to have him arrested if he contacted her or the children. Again, Mother's testimony contradicts this assertion. Although Appellant did testify he believed that he would be arrested, there is no evidence other than his testimony to support this belief. Mother testified that she never refused any request from Appellant for visitation and that she arranged for Appellant to visit the children at his parents' house, but he only attended sporadically. She only ended the visits due to Appellant's alcoholism and violent behavior. She testified that she simply wanted Appellant to get help for his alcohol abuse and tendency to become involved in violent conflicts. There is no evidence that she ever sought, or even considered, a protection order. There is no evidence that she ever threatened to have him arrested or contemplated this action. There is nothing in her testimony to indicate that she would have opposed court-ordered visitation, had it been sought.

**{¶24}** Appellant testified that he believed Mother would have him arrested because he experienced a similar situation with the mother of his first child after he pleaded guilty to harassment. The court noted that Appellant made no effort to determine if his belief about possibly being arrested was actually true, and the court concluded that Appellant's desire to protect himself from a hypothetical legal entanglement was more important to him than maintaining contact with his children. (7/1/25 J.E., p. 6.) The court also properly considered that Appellant had made no effort to enforce his right to visitation or parenting time through the courts. A "parent's efforts to enforce his parental rights" is a "relevant consideration" in adoption proceedings. *In re Adoption of R.A.H.*, 2021-Ohio-

1667, ¶ 14. Thus, Appellant's intent to avoid confrontation with Mother due to an unsubstantiated belief that he might be arrested does not provide justification for failing to maintain contact with the children.

{¶25} This case is similar to *In re Adoption of S.N.C.*, 2003-Ohio-6121 (9th Dist.) in which the father argued that his lack of communication with his child was "because he was an untreated alcoholic and believed it would be futile to ask Mother if he could visit with the child[.]" *Id.* at ¶ 21. The Ninth District held that:

> Even assuming that Appellee was correct in concluding that he might have been unsuccessful in convincing Mother to let him spend a weekend with the child, that does not mean he could not have communicated with the child in other ways. Appellee could have spoken with the child over the telephone. He could have sent mail or gifts to the child. Since Appellee admitted that he did not even once attempt any form of communication with the child despite having the means of doing so, we cannot conclude that Appellee met his burden of going forward with evidence of some facially justifiable cause for his failure to communicate during the requisite one-year period.

*Id.* at ¶ 22. This case illustrates the principle that justifiable cause will not be found simply because the parent believes that attempts at communication would fail, particularly if the parent has not tried to overcome the perceived roadblocks to communication and contact.

{¶26} The circumstances surrounding Mother's discontinuation of regular visits with the children at his parents' house in 2021 (visits which he did not attend regularly)

cannot be considered as justifiable cause for complete failure to communicate in 2024 and 2025. Significantly, Appellant did nothing to try to maintain communication and contact in other ways, such as obtaining court-ordered visitation, sending cards or gifts, or trying to use the many avenues of communication open to him. This is especially compelling as Mother never changed her phone number, unblocked his telephone calls in 2022, and maintained the same social media and email accounts for many years. Further, Appellant did not seek to contact the children through his parents or his sister, all of whom had Mother's full contact information and maintained contact with the children. There is no evidence that Mother sought or obtained a protection order to prevent Appellant from contacting the children. Appellant simply believed he might be subject to some kind of trouble if he tried to maintain contact. The trial judge (as the trier-of-fact) was not required to accept Appellant's testimony or unsubstantiated belief on this point.

{¶27} Although Appellant testified that he once attempted to contact an attorney regarding his visitation rights, there is no other evidence of this and no records from any court indicating that he tried to establish visitation. The record shows that Appellant had been employed with an income of $40,000 to $50,000 since 2021, and could afford to hire an attorney.

{¶28} Based on this record, the trial court did not err in finding that there was no justifiable cause for Appellant's failure to communicate with the children. The manifest weight of the evidence supports the trial court's conclusion that there was no justifiable cause for Appellant's failure to have more than de minimis contact with the minor children in the twelve months preceding the filing of the adoption petitions. Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

Case No. 25 CA 0987

Conclusion

{¶29} Appellant challenges the trial court's conclusion that there was no justifiable cause for his failure to maintain contact with his children, and thus, there was no need to obtain his consent to their adoption. Appellant failed to use the means at his disposal to contact the children, failed to take any step to try to establish legal visitation rights, and tried to justify his lack of contact on an unsubstantiated belief that he might be arrested if he tried to contact them. The record also shows that, although Mother did take some temporary steps to discourage contact, Appellant was at fault in causing Mother's short-lived block of his cell phone number and in causing her to end regular visits with the children at Appellant's parents' house. The record does not support Appellant's arguments that he had justifiable cause for having no contact with the children in the twelve months preceding the filing of the adoption petitions, and his assignment of error is overruled. The judgment of the trial court is affirmed.

Hanni, J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Probate Division, of Carroll County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**