DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Cynthia E., has appealed from the judgment of the Lorain County Court of Common Pleas, Probate Division, finding that her consent was not required for the adoption of her three minor children, K.E., Kr.E., and A.E., because she failed without justifiable cause to communicate with her children for at least one year prior to the filing of the petition for adoption. This Court affirms.
 I. {¶ 2} Cynthia E. ("Mother") and Adam E. ("Father") are the parents of K.E., born June 27, 1998; Kr.E., born December 20, 1999; and A.E., born April 14, 2001. The parents were married in July 1998 and were divorced in December 2002.
 {¶ 3} In 2001, Mother was charged with child endangering after the middle child suffered a skull fracture. Mother pled guilty to attempted child endangering and served several years in prison. See State v. Cynthia E., Lorain C.P. No. 01CR057947. Through a separate action brought by Lorain County Children Services in the Lorain County Juvenile Court, the children were placed in the care of paternal grandparents, Jim and Debbie E., on March 11, 2001. In re K.E., Kr.E., and A.E., Lorain C.P. No. 00JC91147, 00JC91148, and 04JC92626. Following the adjudication of K.E. and Kr.E. as neglected and dependent, and the adjudication of A.E. as dependent, all three children were placed in the legal custody of the paternal grandparents on April 3, 2002. Id. The order of the juvenile court specified that "visitation with parents to be arranged by agreement of the parties or upon further order of Court." Id., at Journal Entry, filed April 3, 2002. Mother was granted a judicial release from prison on July 22, 2003. See State v. Cynthia E., Lorain C.P. No. 01CR057947, at Journal Entry, filed July 22, 2003. As a condition of her release, Mother was ordered to "not associate with [Kr.E.] without approval of juvenile court and successful completion of parenting classes." Id.
 {¶ 4} On January 24, 2005, the children's grandmother, Deborah E., ("Petitioner") filed a petition to adopt the three children. The petition alleged that Mother's consent to the adoption was not required because Mother failed without justifiable cause to communicate or to provide for the maintenance and support of the children for one year preceding the filing of the petition or placement of the minor in the petitioner's home. See R.C. 3107.07(A). Father consented to the adoption; Mother filed an objection.
 {¶ 5} On February 1, 2006, the trial court held a hearing on the necessity of consent by Mother to the adoption. Upon hearing the evidence, the trial court found that Mother's consent was not required due to her unjustifiable failure to communicate with the children for the one-year period immediately preceding the filing of the petition for adoption. The trial court did not conclude, as was also alleged in the petition, that Mother had failed without justifiable cause to provide for the maintenance and support of the children for the requisite period. Mother has now appealed and has assigned two errors for review. They will be addressed together because they are related.
 II. Assignment of Error Number One
"THE TRIAL COURT'S RULING THAT THE CONSENT OF [MOTHER] IS NOT NECESSARY BECAUSE SHE FAILED UNJUSTIFIABLY TO COMMUNICATE WITH THE MINOR CHILDREN IS AGAIN (sic) THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."
 Assignment of Error Number Two
"THE TRIAL COURT ERRED IN ITS RULING BASED ON INSUFFICIENT EVIDENCE PRESENTED BY APPELLEE TO DEMONSTRATE THAT APPELLANT FAILED TO COMMUNICATE WITH THE MINOR CHILDREN FOR THE REQUISITE YEAR AND FAILED TO ALLOW APPELLEE FACIALLY JUSTIFIED FAILURE WAS UNREASONABLE, (sic) THUS FAILING TO CARRY APPELLEE'S BURDEN OF PROOF."
 {¶ 6} Mother has contended that the decision of the trial court was not supported by sufficient evidence and was also against the weight of the evidence. Specifically, Mother has asserted that she did communicate with her minor children during the relevant period, and has asserted, in the alternative, that any lack of communication was justifiable. We find both of Mother's arguments to be without merit.
 {¶ 7} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. While the test for sufficiency requires a determination of whether the complaining party has met its burden of production, a manifest weight challenge questions whether that party has met its burden of persuasion. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing Thompkins, 78 Ohio St.3d at 390
(Cook, J., concurring). Further, a finding that a decision is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. at 4. Thus, a determination that the judgment of the trial court is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Id.
 {¶ 8} When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Alterations sic.) Id., citing State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 9} An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karches v. Cincinnati (1988), 38 Ohio St.3d 12,19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 10} R.C. 3107.07(A) is central to the decision in this case. That statute provides, in relevant part:
"Consent to adoption is not required of any of the following:
"A parent of a minor, when * * * the parent has failed without justifiable cause to communicate with the minor * * * for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."
Therefore, as applied to the present case, Mother's consent to the adoption of the children is not required if Mother failed without justifiable cause to communicate with her children from January 24, 2004 to January 24, 2005.[1]
 {¶ 11} The burden of proving, clearly and convincingly, that a parent has failed to communicate with a child for the requisite one-year period and that such failure was without justifiable cause rests with the petitioner. In re Adoption of Holcomb,
(1985), 18 Ohio St.3d 361, paragraph four of the syllabus. Once the petitioner has established that the parent has failed to communicate with the child for the one-year period, the burden of going forward to show some facially justifiable cause for the failure shifts to the parent, although the burden of proof remains with the petitioner. In re Adoption of Bovett (1987),33 Ohio St.3d 102, paragraph two of the syllabus.
 {¶ 12} The trial court found that Mother did not communicate with her children within the relevant period and that her failure to communicate was without justifiable cause. Upon consideration, we conclude that the weight of the evidence presented at the hearing on these questions supports the judgment of the trial court.
 {¶ 13} The evidence presented at the hearing established that Mother and Father had supervised visits with the children after they were placed with paternal grandparents until July 2002 when Petitioner stopped Mother's visits because of what she believed was inappropriate behavior by Mother. Petitioner testified that, to her knowledge, Mother has not seen the children since July 2002. Petitioner also testified that during the year relevant to the present inquiry, Mother did not come to the house to visit with the children, did not call to talk to the children, and did not send Christmas or birthday gifts to the children. Petitioner testified further that she did not take the children to see Mother during the relevant year. She did not believe Mother should be with the children in an unsupervised setting.
 {¶ 14} Father stated that he facilitated visits between Mother and the children early on when he was still hoping to reunite the family. After his parents expressed an interest in adopting the children, however, he believed that adoption was in their best interests and no longer took the children to see Mother. He specifically denied taking the children to see Mother in 2004, during the relevant one-year period.
 {¶ 15} Mother then testified in her own behalf. She said that Petitioner would not agree to visitation. Mother claimed, in opposition to Father's testimony, that Father brought the children to see her on three particular occasions during 2004. Mother also testified that she briefly saw the children in July 2004 at a funeral for the paternal grandfather.[2]
 {¶ 16} Mother also presented the testimony of three witnesses in an effort to corroborate her position, but none of those witnesses was able to say that he or she actually saw Mother with the children, except for William Morse, her current boyfriend, who was only able to say that Mother unexpectedly and momentarily saw the children at a funeral home during the wake of the paternal grandfather.
 {¶ 17} This Court must first determine whether Petitioner met her initial burden of clearly and convincingly demonstrating that there was no communication between Mother and her children during the relevant one-year period. Conflicting evidence was presented as to whether Mother met with the children during this period. Mother testified that she did, while Father and Petitioner testified that she did not. Specifically, Mother described three visits facilitated by Father and claimed that they occurred in 2004; whereas, Father testified that two of those visits occurred before the relevant period, and one did not occur at all. Petitioner also denied that Mother saw the children in 2004.
 {¶ 18} The trial court apparently credited the testimony of Petitioner and Father, as opposed to the testimony of Mother. The trial court specifically found that the visits facilitated by Father occurred before the relevant period. Petitioner disputed Mother's claim that the children were at the funeral home, that she saw them there, and perhaps said hello, but even if Mother saw the children at the funeral home, such a brief and unexpected occurrence does not constitute communication within the meaning of R.C. 3107.07. See, e.g., In re Adoption of Hedrick (1996),110 Ohio App.3d 622, 626. (communication, within the context of R.C. 3107.07, means the passing of a message or thought from the mind of one person to another); and In re Adoption of Jordan
(1991), 72 Ohio App.3d 638, 644 (finding a "wave, smile or a nod" not to constitute communication, and defining communication as making known, informing a person, conveying knowledge or information, and sending information or messages). In addition, there is no evidence that Mother attempted to communicate with her children through cards, letters, telephone calls, or gifts during the relevant one-year period.
 {¶ 19} This Court recognizes that the trial court was in the best position to evaluate the credibility of the witnesses and give proper weight to their testimony. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Moreover, in reaching its decision, the trier of fact is free to believe all, part, or none of the testimony of each witness. State v.Jackson (1993), 86 Ohio App.3d 29, 33. The decision of the trial court will not be against the manifest weight of the evidence simply because the trial court chose to credit the testimony of Petitioner over that of Mother. Accordingly, we conclude that the trial court's finding that Mother failed to communicate with her children during the relevant year was not against the manifest weight of the evidence, and was also supported by sufficient evidence.
 {¶ 20} This Court must next determine, pursuant to Mother's alternate argument, whether Mother met her burden of going forward by demonstrating some facially justifiable cause for her lack of communication with her children, and whether Petitioner carried the burden of persuasion in establishing that Mother lacked justifiable cause for her failure of communication. In reBovett, 33 Ohio St.3d 102, paragraph one of the syllabus. To justify her failure to communicate, Mother has pointed to Petitioner's refusal to agree to any visitation and has also claimed that she was unable to obtain a court order permitting her to visit with her children.
 {¶ 21} Ohio courts have held that justification of a parent's failure to communicate with his or her child is shown when there has been "significant interference" with a parent's communication with a child or "significant discouragement" of such communication. See In re Adoption of Holcomb (1985),18 Ohio St.3d 361, paragraph three of the syllabus. In the present case, Petitioner admitted that she refused to agree to any visitation. Communication, however, is broader than only visitation. It may also include cards, letters, or telephone calls. See, e.g., Inre Adoption of Doyle, 11th Dist. Nos. 2003-A-0071 and 2003-A-0072, 2004-Ohio-4197, at ¶ 17; In re Adoption of Dewerth
(Jan. 24, 1985), 8th Dist. No. 48060; In re Adoption of Kreyche
(Mar. 18, 1983), 11th Dist. No. 1258. Significantly, neither Mother nor Petitioner provided evidence that Petitioner interfered with Mother's ability to send cards or letters or make telephone calls to her children during the year in question.[3] Therefore, while Petitioner did not agree to visitation, the record fails to demonstrate that she significantly interfered with all possible means of communication by Mother with the children or that she prohibited Mother from seeking a court order for visitation.
 {¶ 22} As stated above, there were two existing court orders that pertained to Mother's ability to associate or visit with her children. First, the terms of Mother's judicial release required Mother to "not associate with [Kr.E.] without approval ofjuvenile court and successful completion of parenting classes" (Emphasis added.) and, second, the juvenile court order granting legal custody to the grandparents stated that visitation with the parents was "to be arranged by agreement of the parties or uponfurther order of Court." (Emphasis added.)
 {¶ 23} Mother had completed a parenting class. Therefore, when Petitioner would not agree to visitation, Mother was entitled to seek a court order for visitation and to associate with Kr.E. Mother has asserted that she was not able to seek such a court order because she could not afford the $300 she claimed it would cost, and that this inability justified her failure to communicate with her children.
 {¶ 24} Even crediting Mother's claim that she could not afford to seek a court order, we find that the existing orders were not so broad as to prohibit all contact by Mother with her children. The orders only addressed Mother's ability toassociate[4] with Kr.E. or to visit with the other children; they did not bar Mother from engaging in other forms of communication with her children. The orders would not, for example, bar communication by cards, letters, or telephone calls. As stated above, there was no evidence that Mother sent any cards or letters or made telephone calls to her children during the relevant year.
 {¶ 25} Given the evidence before the trial court, this Court cannot find that the weight of the evidence supports a conclusion that Mother's failure to communicate with her children was justified. Furthermore, this conclusion is the necessarily dispositive of the issue of sufficiency. State v. Roberts
(Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 26} Accordingly, we find that the evidence supports the decision of the trial court that Mother's consent to adoption was not required. Mother's first and second assignments of error are overruled.
 III. {¶ 27} Mother's two assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Probate Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Moore, J. Boyle, J. concur.
[1] Neither party has objected to the court's finding that January 24, 2004 through January 24, 2005 is the relevant period.
[2] Mother claimed that the trial judge who issued her judicial release told her verbally that she could not call the house or send things to the children. Mother's claimed recollection is in conflict with the journal entry, which indicated only that Mother was not to "associate with [Kr.E.] without approval of juvenile court and successful completion of parenting classes." It is well established that a court speaks only through its journal. See, e.g., State v. King (1994), 70 Ohio St.3d 158, 162. A court does not speak through oral pronouncements. In re Adoption ofGibson (1986), 23 Ohio St.3d 170, 173, fn.3. Such statements "bind no one." Id. Moreover, there is no transcript of the hearing cited by Mother in the record before this Court. This Court will, therefore, assume that the journal entry constitutes the order of the court and will look to the actual language of the journal entry in determining the limitations placed upon Mother.
[3] It is true that Mother claims that, at some point, she received a call from the Sheriff's office telling her that she should not call or send things to Petitioner's home. This warning was in supposed response to Petitioner's report that Mother threatened to kidnap the children. There is no evidence in the record, however, as to when such call to Mother was allegedly made. Therefore, even if the assertion is credited, there is no way for this Court to know whether it applied to the relevant year.
[4] The verb "associate" has been defined as "to keep company with," "to come together," and "to join together or connect." Webster's Third New International Dictionary (1961) 132. The court order, therefore, appears to bar personal visits, but does not bar cards, letters, or telephone calls.