[Cite as *In re Adoption of A.R.L.P.*, 2024-Ohio-3318.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE ADOPTION OF:<br><br>A.R.L.P, K.R.A.P., & C.H.P. | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J.<br><br>Case Nos. 24CA00014, 24CA00015, &<br>24CA00016<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Knox County Court of Common Pleas, Probate Division, Case Nos. 20234006, 20234007, 20234008 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 28, 2024 |
| APPEARANCES: | |

For Appellant

CYNTHIA A. CUNNINGHAM
KOREY M. KIDWELL
JEREMY R. ABRAMS
Kidwell & Cunningham, LTD
112 North Main Street
Mount Vernon, OH 43050

For Appellee

DEVIN M. TRAINER
Assistant Knox County Public Defender
110 East High Street
Mount Vernon, OH 43050

*Hoffman, P.J.*

**{¶1}** Petitioners-appellants B.L.P. and B.T.P. ("Aunt" or "Uncle," individually; "Appellants," collectively) appeal the April 26, 2024 Judgment Entry entered by the Knox County Court of Common Pleas, Probate Division, which denied their petitions for adoption of their great nieces and nephew ("Child 1," "Child 2," and "Child 3," individually; "the Children," collectively), finding the consent of respondent-appellee R.S. ("Father") was required.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Stacie S. ("Mother") and Father are the biological parents of the Children.[1] Via Judgment Entry filed August 10, 2020, the Knox County Court of Common Pleas, Juvenile Division, granted legal custody of the Children to Aunt, the Children's maternal great aunt ("the Juvenile Court Case"). The juvenile court granted Mother "frequent and liberal visitation" with the Children. August 10, 2020 Judgment Entry at p. 2. However, the trial court ordered Father's visitation with Child 2 and Child 3 be supervised, and Father have no contact with Child 1, unless recommended in a therapeutic setting.

**{¶3}** Appellants filed petitions for adoption of the Children on March 10, 2023. In their petitions, Appellants indicated Father's consent was not required because he failed without justifiable cause to have more than de minimis contact with the Children for the one year prior to the filing of the petition.

**{¶4}** The trial court conducted a consent and best interest hearing on the petitions on February 2, 2024.

---

[1] Mother passed away on February 26, 2022.

{¶5} Aunt testified she and Uncle have been married since 1996, and have four biological children of their own. Aunt is the maternal great aunt of the Children and was Mother's maternal aunt. The Children have lived with Appellants for a little over five (5) years and Aunt was granted legal custody of the Children in August, 2020. Appellant noted Father had not seen Child 2 and Child 3 since 2020, when he had supervised visitation through the Knox County Department of Job and Family Services. She added Father had not seen Child 1 since 2019. Aunt recalled the last time Father saw the Children was at Mother's funeral on March 6, 2022. According to Aunt, Father did not interact with the Children at the funeral and the Children did not recognize him.

{¶6} Aunt reiterated, since she was granted legal custody, Father had not made any efforts to contact the Children and had not made any attempts to be involved in their lives. It was only after Appellants filed their petitions Father phoned Aunt to arrange visitation with the Children. According to Aunt, Father told her he had just found her phone number. She indicated she has had the same cell phone number since 2009, and the Knox County Department of Job and Family Services had the phone number as well as her address.

{¶7} Aunt testified the Children have very good relationships with each other and with Appellants. The Children are well adjusted to their current home, school, and community. Child 1 engages in group counseling in and out of school as well as one-on-one counseling in and out of school. Child 1 has an IEP (Individual Education Plan). Aunt stated Child 1 does not do well with change and requires slow transitions into new situations. Child 1 plays softball. Aunt described Child 2 as very smart and very healthy. When Child 2 came into Appellants' home, she was unable to speak properly, had issues

with her eyes which required surgery, and was suffering from malnutrition. Child 2 is a cheerleader and also plays softball. Aunt noted the Children do not currently have any relationship with Father. Child 3 was an infant when he was placed with Appellants. Child 3 had some health issues. Child 3 had seasonal asthma and was hospitalized a couple of times as a result, but has outgrown the issue. Child 3 is involved with wrestling, baseball, and football.

{¶8} Aunt believed adoption was in the best interest of the Children as it would provide them with permanency and stability. Aunt stated, if adoption is granted, she would continue to allow maternal family members to spend time with the Children.

{¶9} On cross-examination, Aunt indicated she had changed addresses twice, but never notified Father. She added Father had her phone number, explaining he called and texted her during the period he had visitation with the Children. Aunt admitted she told Bobbi Wallace, her sister and the Children's maternal grandmother, she would prefer Father not approach the Children at Mother's funeral. She also conceded she told Wallace she (Wallace) was putting the Children in harm's way by allowing them to have contact with Father. Aunt also told Wallace she (Wallace) should not have the Children because she attempted to communicate with Father. She agreed she stated, in a text message to Wallace, there was no way in the world she would allow the Children to have visitation with Father. Aunt acknowledged she informed Wallace she would never forgive her (Wallace) if Father was granted visitation with Child 2 and Child 3. She also disclosed she had not allowed Wallace to have contact with the Children for "a long time," in part, because Wallace was working with Father.

{¶10} Aunt stated she had blocked Father on social media, but not on her phone. She also admitted the Children's school and sports uniforms bear Appellants' sir name, not their legal sir name. However, she denied legally changing the Children's names.

{¶11} Father was called to testify as if on cross-examination during Appellants' presentation of evidence. Father stated he is currently a head shift leader at a Donato's Pizza. He and Mother are the biological parents of the Children. Father noted Mother passed away in February, 2022, but added he and Mother had not lived together since 2018, or 2019. Father and Mother lost custody of the Children in early August, 2020. Both Father and Mother were addicted to methamphetamines at the time. The juvenile court found Father had sexually abused Child 1, and ordered Father to have no contact with Child 1. The juvenile court granted Father supervised contact with Child 2 and 3.

{¶12} Father did not know Appellants' address and did not know "there was a way to get someone's address." Tr. at p. 51. Father also did not have Aunt's phone number. Father indicated he contacted Aunt through Job and Family Services when he had supervised visitation with the Children. Although he asked Mother, while she was still alive, and Bobbi Wallace, Mother's mother, for Aunt's phone number, both women refused to provide it to him for fear Aunt would prevent them from seeing the Children. He assumed neither Job and Family Services nor his attorney in the Juvenile Court Case would give him Aunt's phone number because the case was closed. Father could not contact Appellants through social media as Aunt had blocked him. Father explained he was unable to send cards, gifts, or letters to the Children because he did not have contact information for Appellants. He did not have any way to contact Appellants until after the filing of the petitions. Father acknowledged he had not had any contact with the Children

between March 9, 2022, and March 9, 2023. Father had not seen Child 1 since 2018, and had not seen Child 2 and Child 3 since 2020.  Counsel for the parties stipulated Father paid child support.

**{¶13}** During examination by his counsel, Father stated he was never charged with or convicted of any criminal offense related to the abuse of Child 1. Father continued to deny he abused Child 1 despite the juvenile court's finding.  Father indicated he had no information about the Children, including the names of their therapists and teachers, where they attended school, and whether they played sports, until after the petitions were filed. He explained he did not seek custody or visitation through the juvenile court because he did not know those options were available.  Father recalled, prior to Mother's funeral, Wallace messaged him to tell him Aunt did not want him to speak to or approach the Children at the funeral.  Father testified, after Aunt told Wallace Appellants planned to adopt the Children, Wallace gave him Aunt's phone number because Wallace feared Appellants would take the Children away from her.

**{¶14}** Father testified he has been clean for five (5) years.  He was in drug treatment for 1 ½ - 2 years with Riverside Recovery.  Father complied with all mental health evaluations required in the Juvenile Court Case, but continued therapy was not recommended.

**{¶15}** Uncle testified he and Aunt have been married for 28 years.  The Children have lived with Appellants since 2018.  He described Aunt as a good mother. He noted the Children and Appellants' four biological children get along well.  Uncle agreed with the testimony of Aunt Father only attempted to communicate and/or visit with the Children after Appellants filed the petitions.  During his cross-examination, Uncle indicated he and

Aunt discussed whether Father should have contact with the Children and wanted any ordered contact to be supervised.

**{¶16}** Appellants called family members to testify on their behalf. Each one stated Appellants were good parents to the Children and provided the Children with a safe, stable home. The family members had little to no contact with Father and any contact occurred prior to the Juvenile Court Case. During her cross-examination, Appellants' daughter-in-law noted she has heard a lot of negative comments about Father, including from the Child 1. Appellants also called several individuals who have had worked with the Children over the years, including a family advocate with Knox County Head Start, Child 1's second grade teacher, Child 1's school counselor, Child 1's intervention specialist, and the Children's pediatrician. Each witness spoke positively about Appellants and the Children, and expressed no concerns about the care Appellants provide to the Children.

**{¶17}** Bobbi Wallace, Mother's mother, Aunt's sister, and the Children's maternal grandmother, testified on Father's behalf. Wallace stated she had not seen the Children in seven (7) months, but previously had the Children every other weekend as well as a week in May when Appellants were away. Wallace explained the disruption in visitation happened because she had contact with Father.

**{¶18}** Wallace recalled, when Mother was still alive, Aunt made it difficult for Mother to see the Children and became angry at Mother and limited her visitation with the Children because she talked to Father. Wallace described how Mother would be upset when she returned from her visits with the Children because Aunt belittled her. Wallace heard Aunt and her family speak negatively about Father. Aunt told Wallace she would

be angry if Father was granted visitation and did not want Father in the Children's lives at all.

**{¶19}** Prior to Mother's funeral, Aunt texted Wallace and directed her to contact Father and instruct him not to approach or talk to the Children at the service. Aunt would not contact Father herself. Wallace repeatedly texted Aunt about seeing the Children and asked her to tell the Children she (Wallace) loved and missed them. Unbeknownst to Wallace, Aunt had blocked Wallace on her phone because Wallace had contact with Father. Wallace stated, when Aunt finally texted her back, Aunt informed Wallace "she was going to block me because she didn't want to hear my falseness, that I did not love [the Children] or miss them, that if I loved them I would do anything and everything I could to protect them." Tr. at p. 140.

**{¶20}** Wallace acknowledged Father had asked her for Aunt's phone number, but stated she refused to give it to him because she feared Aunt would prevent her from seeing the Children. In March, 2023, Aunt informed Wallace she and Uncle had legally adopted the Children and did not need Father's consent to do so. Thereafter, Wallace gave Father Aunt's phone number because she feared Appellants would move to Michigan and she would never see the Children again. Wallace noted Father had never asked for Appellants' address, but had previously asked for their phone number, which she did not provide until March, 2023.

**{¶21}** Bria Palms (a.k.a. Bria Hunter), Uncle's sister, testified she has known the Children since they were placed with Appellants. Although Bria had not met Father prior to the hearing, Aunt discussed Father with her. Bria recalled Aunt used vulgar and derogatory language to describe Father, calling him "a piece of crap" and "a child

molester." Tr. at p. 147. Bria indicated Aunt blocked Father on social media and repeatedly stated she did not want Father or Mother to have anything to do with the Children. Prior to Mother's death, Aunt made it very difficult for Mother to visit the Children, claiming Mother was still on drugs. Bria described Aunt as a liar and a narcissist, who was abusive towards the Children. Bria added she observed Aunt verbally abuse Child 1, calling Child 1 fat and stupid, and "flicked [Child 1] upside of the head." Tr. at p. 150.

**{¶22}** After hearing all the evidence, the trial court took the matter under advisement. Via Judgment Entry filed April 26, 2024, the trial court denied Appellants' petitions, concluding Father's consent was required. The trial court found, although Father failed to have contact with the Children during the statutory period, his failure was justifiable because Aunt "significantly interfered with and discouraged [Father] contacting the [C]hildren." April 26, 2024 Judgment Entry at p. 6, unpaginated. The trial court further found the no-contact order issued by the juvenile court constituted justifiable cause for Father's failure to contact Child 1.

**{¶23}** It is from this judgment entry Appellants appeal, raising the following assignments of error:

I. THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT THE BIOLOGICAL FATHER'S CONSENT WAS NECESSARY, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED BY NOT ADDRESSING THE BEST INTERESTS OF THE CHILDREN.

*Standard of Review*

**{¶24}** The right of a natural parent to the care and custody of his or her children is one of the most fundamental in the law and, as a fundamental liberty interest, it cannot be easily extinguished. (Citation omitted.) *In re Adoption of M.T.R.,* 2022-Ohio-2473, ¶19. "Adoption permanently terminates the parental rights of the natural parent" and, as such, "Ohio law requires parental consent to an adoption unless a specific statutory exception exists." (Citation omitted.) *Id.*

**{¶25}** An exemption to parental consent exists if a court finds, after notice and a hearing, in the year preceding the adoption petition, the parent failed without justifiable cause to have more than de minimis contact with the child or the parent failed to provide maintenance and support for the child. R.C. 3107.07(A); *In re Adoption of A.O.P.*, 2022-Ohio-2532, ¶ 14 (12th Dist.). This exemption involves a two-step analysis: (1) whether the parent failed to engage in more than de minimis contact with the child or failed to provide for the maintenance and support to the child in the year immediately preceding the filing of the adoption petition, and (2) whether the parent had justifiable cause for the failure to contact the child or provide maintenance and support for the child. *In re Adoption of C.E.S.*, 2020-Ohio-6902, ¶ 21 (12th Dist.). Because the first element is written in the alternative, the probate court need only find either a lack of contact with the minor or a failure to provide maintenance and support to the minor. *In re Adoption of O.J.B.*, 2020-Ohio-4184, ¶ 9 (12th Dist.).

**{¶26}** The petitioner in an adoption proceeding bears the burden of proving the elements of a consent exemption by clear and convincing evidence. *In re Adoption of S.A.N.*, 2019-Ohio-3055, ¶ 8 (12th Dist.). After the petitioner has established a parent's

lack of contact or support, the parent bears the burden of going forward with evidence to show a facially justifiable cause for the failure, although, the burden of proof remains on the petitioner. *In re Adoption of O.J.B.*, 2020-Ohio-4184, ¶ 10 (12th Dist.).

**{¶27}** When reviewing a probate court's decision on parental consent, an appellate court applies two different standards of review. *Id.* at ¶ 11. An abuse of discretion standard of review applies to the probate court's decision as to whether a parent's contact with his or her child, or provision of maintenance and support for the child, met the statutory standard. *In re Adoption of C.E.S.* at ¶ 22. However, the probate court's decision on whether a parent had justifiable cause for the failure to contact or provide maintenance and support to the child is reviewed under a manifest weight of the evidence standard. *In re Adoption of Masa*, 23 Ohio St.3d 163, paragraph two of syllabus (1986).

**{¶28}** When conducting a manifest weight review, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment. *In re Adoption of E.G.C.*, 2022-Ohio-2381, ¶ 16 (12th Dist.). In applying this standard, however, this court must be mindful the probate court "is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony." *In re Adoption of C.A.L.*, 2015-Ohio-2014, ¶ 29 (12th Dist.).

*Analysis*

I

**{¶29}** In their first assignment of error, Appellants argue the probate court abused its discretion in denying their petition for adoption as the court's finding Father had justifiable cause for his lack of contact with the Children in the one year preceding the adoption petition was against the manifest weight of the evidence. We disagree.

**{¶30}** The evidence was undisputed Father failed to communicate in any manner with the Children since the Juvenile Court Case concluded in August, 2020. However, as mentioned above, even if a parent has completely failed to communicate with his child during the one-year statutory period, his consent will still be required if there is justifiable cause for the failure. *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985); *In re M.G.B.-E.*, 2019-Ohio-753, ¶ 12 (12th Dist.).

**{¶31}** Upon our review of the record, we find there is competent and credible evidence to support the trial court's determination Father had justifiable cause for his failure to contact the Children. The evidence presented at the hearing established Appellants, particularly Aunt, actively prevented Father from having even minimal contact with the Children. Aunt blocked Father on social media. She did not notify Father of Appellants' changes of address in 2021, and again in 2022. Father sought information about the Children and requested Appellants' contact information from Wallace and Mother. However, because Aunt threatened to withhold contact with the Children from Wallace and Mother if they even spoke to Father, neither woman would disclose the information. Prior to Mother's funeral, Aunt told Wallace to contact Father and instruct him

not to speak with or approach the Children at the service. Aunt also told family members she did not want Father to have any involvement in the Children's lives.

**{¶32}** Typically, a noncustodial parent has justifiable cause for failing to communicate when the person with custody of the child significantly interferes with or significantly discourages communication. *In re Adoption of M.G.B.-E.*, 2018-Ohio-1787, ¶ 39. A probate court may examine any preceding events that may have a bearing on the parent's failure to communicate with the child, and the court is not restricted to focusing solely on events occurring during the statutory one-year period. (Citation omitted.) *In re Adoption of B.T.R.*, 2020-Ohio-2685, ¶ 23 (5th Dist.).

**{¶33}** The trial court also found Father's lack of contact with Child 1 was justifiable because he was acting in compliance with the no contact order issued in the Juvenile Court Case. We agree. A parent's lack of contact with a child pursuant to a court-ordered "no contact order" constituted justifiable cause for a parent's failure to communicate with the child. *In re Adoption of A.K.*, 2022-Ohio-350.

**{¶34}** The trial court heard the evidence, and was in the best position to ascertain the veracity of the witnesses. Given the testimony and evidence presented, we cannot find the trial court abused its discretion in denying Appellants' petitions. We further find the trial court's finding Father's consent was required as he had justifiable cause for his lack of contact with the Children was not against the manifest weight of the evidence.

**{¶35}** Appellants' first assignment of error is overruled.

II

**{¶36}** In their second assignment of error, Appellants contend the trial court erred in failing to address and analyze the best interest factors. We disagree.

**{¶37}** Under Ohio law, an adoption involves a two-step process: a consent phase and a best interest phase. R.C. 3107.14(C); *In re Adoption of Baby Boy Brooks*, 136 Ohio App.3d 824, 832 (10th Dist. 2000). While a court is required to determine what is in the best interest of the child, the threshold issue in an adoption case is whether parental consent is required. *In re Adoption of Kuhlmann*, 99 Ohio App.3d 44, 51 (1st Dist.1994). "Parental consent to an adoption, if required, is a jurisdictional prerequisite." (Citations omitted.) *In re Adoption of Baby Boy Brooks*, at 832. "Thus, upon finding that parental consent is required and denied, a probate court cannot then consider the best interest of the child because the court lacks jurisdiction to proceed." *Id.*

**{¶38}** Because the trial court found Father's consent was required, we find the trial court was not required to make a best interest determination and the trial court did not err in failing to do so.

**{¶39}** Appellants' second assignment of error is overruled.

**{¶40}** The judgment of the Knox County Court of Common Pleas, Probate Division, is affirmed.

By: Hoffman, P.J.

Wise, J. and

Baldwin, J. concur