[Cite as *In re Adoption of H.M.M.*, 2025-Ohio-2403.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

## IN RE: ADOPTION OF H.M.M.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 CO 0010**

---

Civil Appeal from the
Court of Common Pleas, Probate Division, of Columbiana County, Ohio
Case No. 2024 AD 00030

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.
Remanded.

---

*Atty. Charles A.J. Strader*, for Appellant

*Atty. Kathleen Bartlett*, for Appellee

Dated: June 27, 2025

---

**WAITE, J.**

{¶1} This appeal arises from a petition for adoption. Appellant Jessica Miller is the child's natural mother. Appellee Andrea Miller is married to the child's natural father, ("Father"). The court determined that Appellant's consent was not required to grant the petition, finding that Appellant had not had more than de minimis contact with child in the twelve months preceding the filing of the adoption petition. Appellant argues that Father prevented her from having contact with the child and that her lack of contact was justified. The record, however, does not support Appellant's argument. Appellant's two assignments of error are overruled and the judgment of the trial court is affirmed.

<u>Facts and Procedural History</u>

{¶2} Appellant and Father married on June 19, 2012, and divorced July 16, 2013. H.M.M. was born in 2011, prior to the marriage. As part of the divorce decree the court approved a shared parenting agreement between the parties. Child support was ordered, with Appellant as the obligor of the support. The decree stated that Appellant's address was in Scottsburg, Indiana. Father lived in Hanoverton, Ohio.

{¶3} The court dissolved the separation agreement on October 22, 2014 and a new custody order was issued. The order noted that Appellant had lived in three different residences in Indiana since the divorce, while Father continued to live in Hanoverton, Ohio. Father was designated as the sole legal custodian of the minor child, now age three, and Appellant was granted companionship pursuant to Columbiana County Court of Common Pleas Loc.R. 9.41. Christmas, spring break, and summer vacation were alternated between the parties, and additional holiday visitation was to be agreed by the parties. Each party was allowed a separate two-week vacation period with the child.

Telephone contact was permitted at least once per day. The exchange of the child was to take place "as the parties may agree." (10/22/14 J.E., Exh. A, p. 1.) Additional companionship of one weekend per month was permitted "if the child's traveling time does not exceed three hours one way." (10/22/14 J.E., Exh. A, p. 2.)

{¶4} On September 16, 2016, Father married Appellee. On November 15, 2024, Appellee filed a petition seeking adoption of H.M.M. in the Columbiana County Probate Court. Father consented to the adoption. The petition alleged that Appellant's consent to the adoption was not needed because she had failed without justifiable cause to maintain more than de minimis contact with the child for a period of at least one year immediately preceding the filing of the petition. The petition did not allege that Appellant failed to provide support for the child.

{¶5} Appellant was duly served with the petition and retained counsel. In opposing the petition, she admitted that she failed to provide more than de minimis contact, but alleged that her failure was due to the actions of Father, and was therefore justified.

{¶6} The court held a final hearing on February 6, 2025, taking testimony from Father, Appellee, and Appellant. The parties were represented by counsel at the hearing. Father testified that he moved to Alliance with Appellee and the child in July of 2017. He testified that he filed a notice of intent to relocate with the court, but did not use any particular form for that purpose. He stated that he provided his current contact information with the Columbiana County Child Support Enforcement Agency (CSEA). Father testified that he contacted Appellant in a text message about his change of address and that she

had received this information. He stated that Appellant engaged in sending numerous text messages after that, and that he obtained a new phone number in early 2018.

{¶7} Father testified that Appellant had four different addresses since their divorce in 2013. He stated that when Appellee filed the petition for adoption, he did not know Appellant's current address. He stated that Appellant did not provide any of her addresses to CSEA, the clerk of courts, or to the court. He testified that Appellant had changed her phone number three times since the divorce, and he did not have her current phone number. He also testified that Appellant has not been providing regular child support payments since the divorce. He was aware CSEA had filed one contempt action against Appellant for failure to pay child support. He said he would receive small payments from her from time to time and then would occasionally receive full payments. He said that the last time Appellant had any contact with the child was December of 2017. He testified that, since the petition for adoption was filed, Appellant has been contacting him through her husband's Facebook Messenger account. He stated that he has done nothing to block Appellant from contacting the child through social media or through any other means. Father stated that he never prohibited the child's grandfather, Appellant's father, from sharing Father's contact information with Appellant. He testified that he has never been served with any paperwork that accused him of denying Appellant parenting time with the child. Father said he knew of no reason why Appellant would not have maintained contact with the child.

{¶8} Appellee testified that she and Father married on September 24, 2016, and she has resided with Father and the child since that time. She testified that Appellant's last visit with the child was in July of 2017, and that she believed Appellant spoke with the

child by phone in December of 2017. Appellant has not contacted the child since then. Appellant has not sent the child cards, gifts, or packages, and has not otherwise had any kind of contact with the child since 2017. She testified that she and her family have always lived in the same vicinity in Ohio. She stated that both her parents and Father's still lived in the same homes and if Appellant was unsure of his contact information she could have contacted them to obtain Father's address and phone number. She stated that Father gave his current contact information to the clerk of court and to CSEA, and that Appellant could also have contacted them for his contact information.

{¶9} Appellant testified that she has lived in four different locations in Indiana since the divorce. She testified that she lived in Morgantown, Indiana with her husband for three years, but she also lived in the towns of Depauw, Marengo, and Shafter. She admitted that she did not notify CSEA in Columbiana County of any of her address changes. She testified that she notified a child support enforcement agency in Indiana of her current address, but she provided no verification in support. Although she stated that she has at times failed to pay child support, she was not aware of any contempt actions against her filed by the CSEA.

{¶10} She testified that the last contact she had with the child was in July of 2017. She complained that she was not able to contact Father after that, and said that he did not give her his current contact information after he moved to Alliance. She testified that she did ask CSEA for Father's contact information, but the agency refused to give it to her. She testified that she looked at various social media platforms in an attempt to find out where Father lived, but found nothing. She testified that her own father had maintained contact with Father and the child, but he was told by Father not to give his

contact information to Appellant. Her father passed away prior to the hearing. She testified that while she did make attempts to contact the child, she did not send cards, gifts, or packages because she did not have the child's address. She testified that she attempted to file a court action action against Father for failure to allow visitation, but she did not offer any documentation in support of this assertion.

{¶11} Appellant also testified that she would regularly drive half of the six-hour drive from her home in Indiana to the child's home in Ohio once per month hoping to meet the child at a highway rest stop. The dates of these trips were randomly picked by her, as she had no contact with Father regarding arranging these meetings. She claimed that while she made this attempt every month for eight years, the child was never taken to any of these rendezvous.

{¶12} The trial judge issued his final order on March 11, 2025. The court did not find Appellant's testimony credible, concluding that her testimony regarding random monthly drives to try to meet with the child was not credible. The court also stated that these alleged meetings would not conform to the terms of the visitation order, because extra visits were only permitted if the child's total travel time would be less than three hours. The judge did not believe Appellant filed or attempted to file a contempt action against Father for failure to allow visitation.

{¶13} The court found neither Father nor his family had substantially discouraged or significantly interfered with Appellant's right to have contact with the child. The court found Appellant had failed to provide credible evidence of any significant frustration or discouragement regarding contact. The court concluded that Appellee had proven by clear and convincing evidence that Appellant failed to provide more than de minimis

contact for the twelve months preceding the adoption petition, and had proven that this lack of contact was without justification.

**{¶14}** The court held that Appellant's consent was not necessary for the adoption to take place. The court also held that adoption was in the best interests of the child. The court granted the adoption petition and set a further hearing for September 11, 2025. This timely appeal followed on April 9, 2025. The Ohio Supreme Court has held that "[a] trial court's finding pursuant to R.C. 3107.07 that the consent to an adoption of a party described in R.C. 3107.06 is not required is a final appealable order." *In re Adoption of Greer*, 70 Ohio St.3d 293 (1994), paragraph one of the syllabus.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN FINDING THAT THE CONSENT OF [APPELLANT] WAS NOT REQUIRED, EVEN THOUGH [APPELLEE] FAILED TO PROVE THAT THE FAILURE TO PROVIDE DE MINIMUM CONTACT WAS THE FAULT OF [APPELLANT], BY A PREPONDERANCE OF THE EVIDENCE.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN FAILING TO DISMISS THE PETITION FOR ADOPTION, IN ACCORDANCE WITH CASE LAW PROVIDED, AND TESTIMONY ELICITED AT THE HEARING OF FEBRUARY 6, 2025.

**{¶15}** Appellant acknowledges that both assignments of error are similar and interrelated, and they will be treated together, here. Appellant is the natural mother of the child. Appellant was married to the child's father, and they were divorced in 2013. Father later married Appellee in 2016. Although Appellant and Father had a shared parenting agreement at the time of their divorce, the court designated Father as sole legal custodian in 2014. Appellee filed a petition for adoption of the child on November 15, 2024. Father consented to the adoption, but Appellant did not. The petition alleged that Appellant's consent was unnecessary because she failed to provide more than de minimis contact with the child for at least a one year period prior to the filing of the adoption petition.

**{¶16}** Appellant contends that natural parents have a fundamental right to the care and custody of their children, and that right extends to adoption proceedings. Appellant's contention is correct. "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165 (1986), citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753 (1982). Adoption terminates those rights. R.C. 3107.15(A).

**{¶17}** The parties agree on most of the applicable law governing this appeal. Pursuant to R.C. 3107.06, the consent of a child's biological parents is generally required in support of a petition for adoption. However, R.C. 3107.07(A) provides a statutory exception to this general rule. It states:

> Consent to adoption is not required of any of the following:
>
> (A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and

convincing evidence that the parent has failed without justifiable cause to have more than de minimis contact with the minor or to provide meaningful and regular maintenance and support of the minor as required by law or judicial decree for a period of one year immediately preceding the filing of the adoption petition.

**{¶18}** A showing of lack of de minimis contact or of lack of meaningful and regular support are stated in the alternative, such that proof of either will suffice to eliminate the need for consent to the adoption. *Adoption of A.R.L.P.*, 2024-Ohio-3318, ¶ 25 (5th Dist.).

**{¶19}** Appellant argues that she did not consent to the adoption. Appellant is aware that consent is not required if the non-consenting parent has failed to provide more than de minimis contact with the child without justifiable cause. While Appellant concedes that she failed to provide more than de minimis contact for at least the twelve months prior to the filing of the adoption petition, her argument on appeal is that Father prevented her from having contact with the child and that her lack of contact was justifiable.

**{¶20}** "Whether a parent failed to have more than de minimis contact with the child for the requisite one-year period is a question of fact to be decided on a case-by-case basis." *In re Adoption of B.R.R.*, 2024-Ohio-478, ¶ 46 (7th Dist.), citing *In re Adoption of M.B.*, 2012-Ohio-236, ¶ 21. However, "Whether justifiable cause has been proven by clear and convincing evidence is a separate issue the determination of which will only be reversed on appeal if it is against the manifest weight of the evidence." *In re Adoption of F.A.*, 2015-Ohio-2249, ¶ 9 (9th Dist.), citing *In re Adoption of M.B.* at paragraph two of the syllabus. Clear and convincing evidence requires that the proof must "produce in the

mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985).

**{¶21}** "Ohio courts have held that justification of a parent's failure to communicate with his or her child is shown when there has been 'significant interference' with a parent's communication with a child or "significant discouragement" of such communication." *In re Kr.E.*, 2006-Ohio-4815, ¶ 21 (9th Dist.), citing *In re Adoption of Holcomb*, paragraph three of the syllabus. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

**{¶22}** "Once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner." *In re Adoption of Bovett*, 33 Ohio St.3d 102 (1987), paragraph two of the syllabus.

**{¶23}** Appellant contends she provided substantial evidence justifying her failure to contact the child, and that Appellee failed to rebut her justification evidence. She maintains Father failed to file a Notice of Intent to Relocate with the court prior to moving to Alliance, Ohio, which prevented her from contacting Father or the child. She argues that Father changed his phone number in 2018 and did not notify her of the new number. She claims that Father did not provide the date or substance of the last communication he had with her, and that he did not attempt to locate her through Facebook or other social

media.  Appellant claims this was required by the custody order.  She argues that Father only supporter her position when he testified it was not his job to ensure contact between the child and Appellant.

**{¶24}**  Appellant also argues that she attempted to reach out to Father but was met with indifference and silence.  She contends that she searched social media and the internet to find him, to no avail.  Although she knew that her own father maintained contact with Father and the child, she testified that Father told the grandfather not to disclose the information to Appellant.  She claims that she traveled every month for several years to what she now claims was a mutually agreed exchange point approximately three hours from her home, but that Father never arrived at this meeting point.

**{¶25}**  Many of Appellant's factual assertions are not supported by the record or were not found credible by the trial court.  "The finder of fact is free to believe some, all or none of the testimony presented by each witness and can decide between credible and incredible parts of witness testimony."  *Vaughn v. Oliver*, 2021-Ohio-3595, ¶ 38 (7th Dist.).  The trial court specifically noted in its final judgment entry that the judge did not find Appellant credible.  "The Court . . . finds that the child's mother's testimony . . . to not be credible or logical." (3/11/25 J.E., p. 3.)

**{¶26}**  Appellant has chosen to rely almost entirely on her own testimony in order to support her arguments on appeal, and largely discounts the testimony of the other witnesses.  However, the testimony of Father and Appellee contradict Appellant's testimony and support the findings of the trial court.  For example, Appellant claims that there was no evidence that Father filed a notice of intent to relocate, but Father testified that this notice was filed.  (2/6/25 Tr., p. 23.)  Father testified that the court was aware of

his current address, and that he has continued to receive communications from the court and CSEA after he moved to Alliance. (2/6/25 Tr., p. 30.) Appellee also testified that the court and CSEA were aware of Father's address and that Appellant could have contacted them to get this address. (2/6/25 Tr., p. 37.)

{¶27} Appellant denies that she was ever provided with Father's Alliance address, but Father testified that he notified Appellant of his new address at the time he moved. (2/6/25 Tr., p. 9.) He testified that Appellant acknowledged she received the new address. (2/6/25 Tr., p. 9.) He testified that Appellant communicated with him many times by text after he gave her his contact information. (2/6/25 Tr., p. 9.)

{¶28} While Appellant complains that Father obtained a new phone number in 2018, Father testified that he had to change his phone number at the beginning of 2018, due to identity theft. (2/6/25 Tr., p. 13.) He could not contact Appellant with his new number because she had changed her own phone number, and he did not know her new number or her address. (2/6/25 Tr., p. 13.) Father testified that he did not try to locate Appellant through Facebook after she changed her phone number and address. (2/6/25 Tr., p. 26.) He did state that it was not his job to locate her on Facebook. (2/6/25 Tr., p. 26.) Appellant's attorney conceded at the adoption hearing that nothing in the 2014 custody order could be construed to place a duty on Father to locate Appellant if she moved and failed to provide him with her current address. (2/6/25 Tr., p. 29.)

{¶29} Appellant testified that the last time she saw the child was July of 2017. (2/6/25 Tr., p. 44.) She claimed she reached out to Father after the child was returned to him following this visit, but he did not respond. (2/6/25 Tr., p. 44.) The most that can be inferred from her testimony is that she tried to contact Father once. Appellant also

testified that she contacted two child support enforcement agencies to obtain Father's contact information, but was told they could not release that information. There were no witnesses from any agencies to verify that testimony, and no other substantiation.

**{¶30}** Appellant relies heavily on Father's change of address in 2017 and her testimony that she was unable to find his new address. These two facts form the primary basis of her justification for not contacting her child. Although Father did move in 2017, his own testimony was that he did notify Appellant of his new address. He testified that he also notified the court and CSEA of his new address. The record also reflects that Father's extended family and Appellee's parents continued to live in same area as Father following the divorce. (2/6/25 Tr., p. 37.) Appellant's family members likewise lived close to the child, and Appellant testified that her own father kept in contact with the child. Appellant alleges she was completely unable to contact any of these people to find out where her child was living. The trial judge noted that it was Appellant who made it difficult for Father to keep track of her whereabouts, since she changed her residence four times and her phone number at least three times without notifying Father, the court, the clerk of courts, or the CSEA. (2/6/25 Tr., p. 11.)

**{¶31}** Appellant also contends that her failure to contact the child was justifiable because she drove to some meeting point every month for seven years and Father never arrived at the meeting point with the child. She claims she expected Father to bring the child to this meeting point at a Denny's Restaurant off of exit 69 on an unnamed highway. There is no evidence that Father ever agreed to these alleged meetings or even knew about them. Appellant offered no proof other than her own testimony that she ever actually made these trips. The court did note that, even so, this type of meeting was not

provided for in the parties' visitation order. Appellant's own testimony was that she did not pick the same weekend every month and that her trips were random. As she testified that she had no contact with Father, it is unclear why she may have maintained a belief he might meet her at a location he may not have known about on random weekends every month. The court clearly stated that it found this testimony to be incredible. As the court did not believe the testimony regarding these alleged trips, and there is no evidence to substantiate Appellant's other testimony, this matter turned entirely on credibility issues, and we generally are required to leave questions of credibility to the trial court.

**{¶32}** It is equally clear the trial court did not believe Appellant's accusations that Father was interfering with visitation with the child, that she did not know where the child was living, or that she made any attempt to find out where the child was living. The court noted that Appellant, by her own testimony, showed she made no attempt to enforce her right to companionship by filing contempt motions against Father. She did not attempt to contact Father's extended family who lived near his old address in Hanoverton. Appellant testified as to her belief Father was blocking her from contacting him through social media, but again there was no proof of this other than her testimony, and Father denied the accusations. The record shows that Appellant was able to contact Father after the adoption petition was filed by using her husband's Facebook Messenger account. There is no explanation why she did not try this avenue sooner.

**{¶33}** The credible testimony of record, according to the trial court, was that Father moved from Hanoverton a short distance away to Alliance in 2017. He notified the court and Appellant of his change of address. Appellant, on the other hand, moved four times since the divorce and changed her phone number three times without notifying Father,

the court, or CSEA. The last time Appellant had any contact with the child was either July or December of 2017. She made no attempt to send gifts, cards, or emails, nor did she attempt any other type of communication. Although Appellant stated that she did not have Father's address or phone number since 2017, the record shows she made little or no effort to find that address until after the petition for adoption was filed.

{¶34} The record supports by clear and convincing evidence that Appellant failed, without justifiable cause, to maintain more than de minimis contact with the child in the year prior to Appellee's filing of the petition for adoption, and that Father and his family did not substantially interfere with Appellant's right to contact her child. There was neither significant interference nor significant discouragement of Appellant's communication with the child. The manifest weight of the evidence supports the trial court's findings. Appellant does not deny or contest that she failed to maintain contact, and she does not contest that the adoption is in the best interests of the child. Therefore, Appellant's assignments of error are without merit.

## Conclusion

{¶35} Appellant appeals the ruling of the Columbiana County Probate Court's decision that her consent was unnecessary before granting a petition for adoption of her child to Appellee. Appellant admits she failed to maintain more than de minimis contact, but argues that her failure was justified because her ex-husband interfered with her right to have contact with the child. The record does not support Appellant's argument. There is evidence that Appellant was provided with Father's address change and phone number in 2017 and that it was Appellant who frequently changed her address and phone number without notifying Father, the court, or the CSEA of her current contact information. The

Case No. 25 CO 0010

record fully supports the trial court judgment by clear and convincing evidence, and the manifest weight of the evidence supports the trial court's findings. Appellant's consent to adoption was not necessary because she failed to maintain more than de minimis contact with the child, without justification. Appellant's two assignments of error are overruled and the judgment of the trial court granting Appellee's petition for adoption is affirmed. The case is remanded to the trial court for further proceedings.

Robb, P.J. concurs.

Hanni, J. concurs

---

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Probate Division, of Columbiana County, Ohio, is affirmed. This matter is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**